THE MANUFACTURERS LIFE INSURANCE COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90845. Promulgated March 12, 1941.

*John W. Townsend, Esq.,* for the petitioner.
*William A. Schmitt, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding involves deficiencies in income tax of $9,795.01 for 1932, $9,917.78 for 1933, and $10,458.40 for 1934. Some of the issues raised in the pleadings have been settled by stipulation. The remaining issues will be stated and discussed separately below. The parties have submitted a written stipulation of the essential facts in all of the issues.

The petitioner is a life insurance company, organized under the laws of the Dominion of Canada, with its principal office at Toronto, Ontario, Canada. It transacts business in several states of the United States as well as in Canada. It filed income tax returns for the calendar years 1932, 1933, and 1934 with the collector of internal revenue at Detroit, Michigan. Such returns were made on the cash receipts and disbursements basis.

The following provisions of sections 201, 202, and 203 of the Revenue Acts of 1932 and 1934 are involved:

SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

\* \* \* \* \* \* \*

(b) RATE OF TAX.—In lieu of the tax imposed by section 13, there shall be levied, collected, and paid for each taxable year upon the net income of every life insurance company a tax as follows:

\* \* \* \* \* \* \*

(2) In the case of a foreign life insurance company, 13¾ per centum of its net income from sources within the United States.

SEC. 202. GROSS INCOME OF LIFE INSURANCE COMPANIES.

(a) In the case of a life insurance company the term "gross income" means the gross amount of income received during the taxable year from interest, dividends, and rents.

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

(1) TAX-FREE INTEREST.—The amount of interest received during the taxable year which under section 22 (b) is exempt from the taxes imposed by this title;

(2) RESERVE FUNDS.—An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only;

(3) DIVIDENDS.—The amount received as dividends (A) from a domestic corporation which is subject to taxation under this title, other than a corporation entitled to the benefits of section 251, and other than a corporation organized under the China Trade Act, 1922, or (B) from any foreign corporation when it is shown to the satisfaction of the Commissioner that more than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the foreign corporation has been in existence) was derived from sources within the United States as determined under section 119;

\* \* \* \* \* \* \*

(5) INVESTMENT EXPENSES.—Investment expenses paid during the taxable year: *Provided,* That if any general expenses are in part assigned to or included in the investment expenses, the total deduction under this paragraph shall not exceed one-fourth of 1 per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year;

(6) REAL ESTATE EXPENSES.—Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company, \* \* \*

(7) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence; and

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

(b) RENTAL VALUE OF REAL ESTATE.—The deduction under subsection (a) (6) or (7) of this section on account of any real estate owned and occupied in whole or in part by a life insurance company, shall be limited to an amount which bears the same ratio to such deduction (computed without regard to this subsection) as the rental value of the space not so occupied bears to the rental value of the entire property.

(c) FOREIGN LIFE INSURANCE COMPANIES.—In the case of a foreign life insurance company the amount of its net income for any taxable year from sources within the United States shall be the same proportion of its net income for the taxable year from sources within and without the United States, which the reserve funds required by law and held by it at the end

of the taxable year upon business transacted within the United States is of the reserve funds held by it at the end of the taxable year upon all business transacted.

1. Our first question is whether in determining petitioner's net taxable income under sections 202 and 203 of the Revenue Acts of 1932 and 1934 the tax-free interest from obligations of the United States and tax-free dividends from domestic corporations are deductible from gross income from all sources (world-wide income) or from the income from sources within the United States only; and whether, if the statute is construed as requiring the deduction of such interest and dividends from world-wide gross income, it is constitutional.

In computing petitioner's taxable income for the years 1932, 1933, and 1934 the respondent first determined the net income by including in gross income the items of interest, dividends, and rents, as provided in section 202 (a) above, and deducted therefrom the items allowable under section 203 (a), including tax-free interest and dividends. He then determined the amount of the petitioner's net income from sources within the United States, on which the tax is levied, under section 201 (b) (2) by the use of proportional factors based on the percentages of reserves for its foreign and domestic business as provided in section 203 (c).

The petitioner's contentions are that its tax-free interest and dividends should be deducted solely from its income from sources within the United States rather than from its "world-wide" income. This would, of course, materially reduce the amount of petitioner's taxable income since it would permit the deduction of all of the tax-free interest and dividends from an already partially determined net income, that is, the income arrived at after deducting from gross income all of the allowable items except such interest and dividends and then applying the percentage of reserves formula.

The gist of petitioner's argument is that the statute as construed and applied by the respondent discriminates against foreign life insurance companies to the advantage of domestic life insurance companies.

Petitioner's contention, as far as we know, is a novel one. No case in which the question has been decided is called to our attention, and we know of none.

The most obvious and at the same time the most convincing objection to the method of computation urged by the petitioner is that it is not the method prescribed by the statute. The relative merits of the two methods is a matter which addresses itself to the lawmakers rather than to us.

The statute under consideration is not ambiguous. It provides a complete plan for taxing life insurance companies, both domestic and foreign, differing in many respects from that under which other tax-

payers are taxed. The items of gross income as well as those deductible in computing net income are specific and limited. No distinction is made between domestic and foreign companies either as to the gross income or net income. In the case of a foreign life insurance company, after computation of the net income in accordance with section 203 (a) and (b) the net income from sources within the United States, on which the tax is levied, is determined by application of the percentage of reserves formula as provided in section 203 (c). The respondent has applied the statute literally in determining the petitioner's tax liability for the years involved. The petitioner's complaint lies with the substance of the statute rather than with the method of its administration.

This brings us to petitioner's alternative contention that the statute, as construed by the respondent, is violative of the Fifth Amendment and therefore unconstitutional.

Even assuming that the statute discriminates against foreign life insurance companies in favor of domestic companies, which, we may say, is not evident from the facts in the instant case, this would not constitute any infringement of petitioner's rights under the Fifth Amendment. The Supreme Court has held in a number of cases that to be violative of the Fifth Amendment the taxing statute must be so arbitrary and capricious as to result in the confiscation of property rather than the levying of a tax. *Knowlton* v. *Moore*, 178 U. S. 41; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1; *Nichols* v. *Coolidge*, 274 U. S. 531; *Tyler* v. *United States*, 281 U. S. 497; *Heiner* v. *Donnan*, 285 U. S. 312.

In *Veazie Bank* v. *Fenno* (75 U. S.), 8 Wall. 533, 548, it was said that "if a particular tax bears heavily upon a corporation, or a class of corporations, it cannot, for that reason only, be pronounced contrary to the Constitution."

In *Mager* v. *Grima* (49 U. S.), 8 How. 490, the Court said with reference to a tax levied by the State of Louisiana: "We can see no objection to such a tax, whether imposed on citizens and aliens alike, or upon the latter exclusively." See also *McCray* v. *United States*, 195 U. S. 27; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Steward Mach. Co.* v. *Davis*, 301 U. S. 548; *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288.

In *Steward Mach. Co.* v. *Davis, supra*, the Court said:

The Fifth Amendment unlike the Fourteenth has no equal protection clause. *LaBelle Iron Works* v. *United States, supra* [256 U. S. 377]; *Brushaber* v. *Union Pacific R.R. Co., supra*, * * * But even the states, though subject to such a clause, are not confined to a formula of rigid uniformity in framing measures of taxation. *Swiss Oil Corporation* v. *Shanks*, 273 U. S. 407 * * *. They may tax some kinds of property at one rate, and others at another, and exempt others altogether. [Citing cases.] They may lay an excise on the

operations of a particular kind of business, and exempt some other kind of business closely akin thereto. [Citing cases.] If this latitude of judgment is lawful for the states, it is lawful, a fortiori, in legislation by the Congress, which is subject to restraints less narrow and confining. *Quong Wing* v. *Kirkendall, supra* [223 U. S. 59].

The petitioner's contention that the statute in question as construed and applied by the respondent is unconstitutional is not sustained.

2. Is the petitioner entitled to a deduction under section 203 (a) (2) of the 1932 and 1934 Acts on account of reserves held to liquidate future unaccrued and contingent liabilities under permanent total disability provisions of life insurance policies, in respect of benefits that may become payable, if disability continues, to policyholders disabled at the date of the reserve computation?

The facts regarding the reserves in controversy have been fully set forth in the stipulation and need not be stated here. For our present purpose it suffices to say, as the respondent concedes in his brief, that these reserves are of the same type as the reserves which were under consideration in *Equitable Life Assurance Society of the United States*, 33 B. T. A. 708; *Monarch Life Insurance Co.*, 38 B. T. A. 716; affd. (C. C. A., 1st Cir.), 114 Fed. (2d) 314; *Pan-American Life Insurance Co.*, 38 B. T. A. 1430; affd. (C. C. A., 5th Cir.), 111 Fed. (2d) 366; affd., 311 U. S. 272; and *Oregon Mutual Life Insurance Co.* (C. C. A., 9th Cir.), 112 Fed. (2d) 468; affd., 311 U. S. 267. . The view taken by the Board and the courts in the cited cases to the effect that the reserves in question are reserve funds required by law within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934 was affirmed by the Supreme Court in the recent case of *Helvering* v. *Oregon Mutual Life Insurance Co.*, *supra*. On authority of that case, and of the other cases referred to, this issue is determined in favor of the petitioner.

3. Should there be included in petitioner's gross income the accrued interest on mortgage loans on real estate voluntarily deeded to the petitioner, mortgagee, in lieu of foreclosure proceedings, where value of the property was (1) less than the principal amount of the loan and charges, and (2) less than the principal amount of the loan and charges plus accrued interest?

During 1932, 1933, and 1934, the petitioner acquired certain real estate upon which it held mortgages as security for loans and advances theretofore made and then in default. The properties were voluntarily deeded to the petitioner in lieu of the institution of foreclosure proceedings. During 1932 six parcels of property were so deeded to the petitioner. In one case the value of the property at the date the deed was given was less than the principal and charges. In the other five cases the value of the property was in excess of

the principal and charges but not in excess of the principal and charges and accrued interest.

During 1933 the owners deeded six parcels of land to the petitioner under like circumstances. In two cases the value of the property at the date of the deed was less than principal and charges and in the other four cases the value of the property was less than the principal and charges and accrued interest.

During 1934 the owners of 30 parcels of property deeded the mortgaged property to the petitioner under like circumstances. In 11 cases the value of the property at the date of the deed was less than principal and charges and in the other 19 cases the value was less than the principal and charges plus accrued interest.

The petitioner, making its returns on a cash receipts and disbursements basis, did not report any of the amounts of accrued interest in its returns. In determining the deficiencies herein the respondent has added to petitioner's income all of the interest accrued on the mortgage loans at the time the properties were acquired by the petitioner, amounting to $14,837.06 in 1932, $26,845.49 in 1933, and $77,630.87 in 1934. The petitioner now concedes that it is taxable on a portion of such interest, that is, to the extent that the value of each parcel of real estate exceeded the principal amount of the loan and charges against it. It contends, however, that it is not chargeable with any interest over and above such excess value, if any. The accrued aggregate interest in the transactions referred to above exceeded such excess values by the amounts of $2,846.02 in 1932, $7,619.88 in 1933, and $46,601.98 in 1934. Those are the amounts which the petitioner now contends were erroneously included in taxable income.

The petitioner's contentions are in line with the decision of the United States Circuit Court of Appeals for the Eighth Circuit in *Helvering* v. *Missouri State Life Insurance Co.*, 78 Fed. (2d) 778, reversing 29 B. T. A. 401. The court held in that case that a mortgagee does not receive any of the accrued interest on a mortgage loan where the property is voluntarily deeded over or surrendered by the mortgagor and its value at the time is not in excess of the principal amount of the loan. That case was followed by the Board in *Manhattan Mutual Life Insurance Co.*, 37 B. T. A. 1041. See also *Commissioner* v. *Vandeveer*, 114 Fed. (2d) 719.

A distinction was made in *Helvering* v. *Missouri State Life Insurance Co.*, *supra*, between cases where the mortgaged property is surrendered to the mortgagee and where it is purchased by the mortgagee at a forclosure sale for an amount equal to the principal of the loan plus the accrued interest. It was held that in the latter case the mortgagee receives payment of the accrued interest. This view was adopted by the Supreme Court in *Helvering* v. *Midland*

*Mut. Life Insurance Co.*, 300 U. S. 216; *reversing Midland Mut. Life Insurance Co.* v. *Commissioner*, 83 Fed. (2d) 629, which was in disagreement with *Helvering* v. *Missouri State Life Insurance Co.*, *supra*, on this point. We think that the distinction between the two types of transaction was well made in *Helvering* v. *Missouri State Life Insurance Co.*, *supra*, and that the decision of the Supreme Court in *Helvering* v. *Midland Mutual Life Insurance Co.*, *supra*, is not in point in the instant case.

We hold that the petitioner is taxable only upon so much of the accrued interest on the mortgage loans in question as was represented by the excess of the value of the real estate which it acquired by voluntary deed over the principal amount of the loans and proper charges.

4. In this issue the question presented is whether the taxes and expenses incident to the operation of certain farm properties are deductible under section 203 (a) (6) above. Also indirectly involved is the question of whether the income realized from the sale of produce from these properties is includable in gross income.

During the years 1932 and 1933 the petitioner operated certain real estate properties, ordinarily referred to as "farm properties", which it had acquired through foreclosure or by voluntary deeds. Petitioner held and operated these properties during the years in question because it could not find a sale for them at a satisfactory price. During each taxable year such properties produced income from the sale of farm and orchard produce in the amounts of $1,590.26 for 1932 and $1,619.04 for 1933.

The taxes on the real estate and the expenses incident to the operation of the properties amounted to $3,751.83 in 1932 and $3,455.14 in 1933.

In its income tax returns for 1932 and 1933 the petitioner reported the amounts received from the sale of produce in gross income and deducted the taxes and expenses incurred in operating the properties. In his determination of the deficiencies herein the respondent has excluded the amounts received from the sale of produce from gross income and has disallowed the deduction of the taxes and expenses.

Section 203 (a) (6) above provides specifically for the deduction of "Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company." However, section 203 (b) places a limitation upon the deductions allowable under section 203 (a) (6) and (7). It provides:

(b) RENTAL VALUE OF REAL ESTATE.—The deduction under subsection (a) (6) or (7) of this section on account of any real estate owned and occupied in whole or in part by a life insurance company, shall be limited to an amount which bears the same ratio to such deduction (computed without regard to this subsection) as the rental value of the space not so occupied bears to the rental value of the entire property.

These provisions of the statute (sec. 245 (a) (6) and (7), and (b), of the 1921 and 1924 Acts) were under review by the Supreme Court in *Helvering* v. *Independent Life Insurance* Co., 292 U. S. 371, and *Rockford Life Insurance Co.* v. *Commissioner*, 292 U. S. 382. In the former case it was held that the statute was not unconstitutional in that it requires a life insurance company to report in gross income the rental value of the portion of its office building which it occupied in order to claim a deduction for the expenses chargeable to the building. In the latter case it was held that the deduction for depreciation allowable under section 203 (a) (7) of the 1928 Act (the same as the 1932 and 1934 Acts was limited under section 203 (b), in the case of furniture and fixtures, to the depreciation on furniture and fixtures used in connection with the company's "investment business." The term investment business was used in reference to activities productive of taxable income from interest, dividends, and rents. In its opinion the Court said:

* * * In reason the cost of depreciation, like other items of expense to be deducted, ought to be limited to that related to the income taxed. Allowance of deduction of expenses incurred for the correction of premiums or in respect of other income not taxed would be hard to justify. In absence of specific declaration of that purpose, Congress may not reasonably be held to have intended by that means further to reduce taxable income of life insurance companies.

There is adequate evidence that Congress intended to limit deductions of expenses to those related to the taxed income. *Helvering* v. *Independent Life Insurance Co.,* supra. In the reports of committees having in charge the act of 1921 in which first appeared the language under consideration, section 203 (a) (7), it it said: "The proposed plan would tax life insurance companies on the basis of their investment income from interest, dividends, and rents, with suitable deductions for expenses fairly chargeable against such investment income." Section 203 (a) (5), by restricting deductions to investment expenses, indicates purpose to exclude those not related to investment income. Section 203 (b), by condition imposed, similarly restricts deductions of real estate expenses. The language under consideration opposes deduction of unrelated expenses and is in harmony with the construction for which the commissioner contends. * * *

Assuming that the rule as to deductions for depreciation allowable under subsection (a) (7) applies equally to deductions for taxes and other expenses under subsection (a) (6), our question is whether the taxes and expenses here under consideration are related to petitioner's investment income from interest, dividends, and rents.

That the proceeds from the sale of farm and orchard produce are in no sense "interest", "dividends" or "rents", is too plain for argument. Consequently such proceeds are not includable in petitioner's gross income. It follows under the ruling of the Court in *Rockford Life Insurance Co.* v. *Commissioner*, supra, that the expenses incurred in producing this income are not related to "investment income" and must be excluded from the deductions.

We think, however, that the taxes paid on the real estate on which the crops were produced fall in a different category. This real estate was acquired and held by the petitioner not for the purpose of producing nontaxable income but by reason of the default of the owners on their mortgage indebtedness to the petitioner. Real estate mortgages, particularly on farm lands, constitute one of the principal sources of investment income (interest) of many life insurance companies. Usually when it becomes necessary through default of the mortgagor to take title to the property it is rented to a tenant and so continues to produce investment income in the form of rents. In such cases the deduction of the taxes and expenses paid on the property would not be questioned. Is this right of deduction cut off if the insurance company is unable to find a desirable tenant or purchaser and is forced to operate the property itself? As to the taxes we do not think that this would result. Taxes are an essential part of the cost of preservation of the company's investment in the real estate, whether the property is rented, or permitted to lie idle, or operated by the company. They are unlike the expenses which are incurred entirely in the production of a marketable crop, such as the cost of fertilizer, cultivation, and harvesting. Such expenses, since not related to the production of taxable income, could not be deducted.

We hold on the facts of record that the taxes paid on the real estate in question during 1932 and 1933 are deductible from gross income and that the balance of the amounts in dispute, representing expenses incident to the production of the crops are not deductible.

5. The next question for consideration is whether the petitioner is entitled to deduct from the gross income the amounts paid to the Canada Life Assurance Co. for the use of certain securities borrowed by it from that company and pledged with the New York Insurance Department as reserves against reinsurance in respect of policies written by the Canadian company in the United States.

The facts giving rise to this issue are that during the taxable years here involved the petitioner reinsured certain risks on policies written in the United States by the Canada Life Assurance Co. The New York Insurance Department required that the reserves against such reinsured business be invested in United States securities and maintained by a company licensed to do business in that state. The petitioner was not so licensed and accordingly the Canada Life Assurance Co. invested its own funds to the amount of the required reserves in the United States securities, the rate of return on which was lower than the rate of return on Canadian securities in which its funds ordinarily would have been invested, and permitted such United States securities to be put up on behalf

of petitioner as reserve funds to protect the business so reinsured by petitioner. It was agreed between the petitioner and the Canada Life Assurance Co. that petitioner would pay to such company, in consideration of such arrangement, an amount equal to the difference between the actual rate of return on such United States securities and the average rate of return which would have been realized by the Canada Life Assurance Co. had its funds not been so invested and loaned. This difference in return, it is agreed to between the parties, approximates one-half of 1 percent per year.

Under section 203 (a) (8) above the petitioner is permitted to deduct "all interest paid or accrued within the taxable year on its indebtedness." The petitioner contends that the amounts which it paid to the Canada Life Assurance Co. during the taxable years involved, under the arrangement described above, was interest paid on its indebtedness.

To give rise to a deduction for interest paid or accrued there must first be a money indebtedness (*Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552), there must be interest due on the indebtedness, and the interest must be paid (if on the cash basis) or accrued (if on the accrual basis) within the taxable year. *Baltimore & Ohio Railroad Co.*, 29 B. T. A. 368; affd., 78 Fed. (2d) 460; *Pierre S. du Pont*, 37 B. T. A. 1198, 1272.

What the petitioner paid to the Canada Life Assurance Co. was not interest upon an indebtedness but an amount agreed upon in return for the use of its securities. It was similar to the payment of the equivalent of dividends on borrowed stock, which has been held not to be deductible as interest. *Gladys G. Terbell et al., Executors*, 29 B. T. A. 44; affd., 71 Fed. (2d) 1017.

The petitioner is not entitled to the deduction of the amounts in dispute as interest paid upon its indebtedness.

6. The question involved under this issue is whether certain amounts of its investment income which the petitioner allocated to and set up in its books to the credit of a staff pension fund are to be excluded from its gross income or deducted from its gross income as interest payments.

During and prior to the taxable years involved the petitioner managed a staff pension fund for the benefit of its employees. The fund consisted of contributions by both the company and its employees and was held for the purpose of paying pensions to the employees upon their retirement. The funds comprising the staff pension fund were held by the petitioner and were commingled with and invested with its other invested assets. Each year the petitioner computed the interest earned by the staff pension fund at the average net rate of interest earned upon the mean invested assets. Such interest was credited to

the fund during the taxable years in the amounts of $18,294.41 in 1932, $23,384.52 in 1933, and $33,640.81 in 1934.

During the taxable years there was paid out of the fund to employees who withdrew their shares interest in the amounts of $365.58 in 1932, $915.09 in 1933, and $1,263.95 in 1934.

In the determination of the deficiencies herein the respondent included in petitioner's taxable income all of the interest credited to the staff pension fund and allowed the deduction of the amounts of interest paid to the employees in those years.

The petitioner contends that the amounts of interest credited to the staff pension fund should be excluded from its taxable income, either by way of an exclusion from gross income or by way of a deduction from gross income.

Any deduction of such amounts from gross income would necessarily have to be made under section 203 (a) (8) above, as "interest paid or accrued within the taxable year on its indebtedness." There is no provision in the act governing the computation of the net income of insurance companies, similar to section 23 (q) (1932 and 1934 Acts), applicable to individuals and corporations generally, which authorizes the deduction of amounts paid by an employer to a pension trust for the benefit of the employees.

It is too plain for argument, we think, that the mere crediting of a proportional part of its investment income to the staff pension fund in its books was not a payment of interest on its indebtedness by the petitioner.

Even assuming that under the staff pension fund agreement the petitioner was obligated to the fund in the taxable years in approximately the amounts credited to the fund and that these amounts represented interest on its indebtedness, they would not be deductible by the petitioner reporting on the cash basis unless actually paid during the taxable years. *United States* v. *Mitchell*, 271 U. S. 9; *Massachusetts Mutual Life Insurance Co.* v. *United States*, 288 U. S. 269; *United States* v. *Collier*, 104 Fed. (2d) 420; *Fred W. Leadbetter*, 39 B. T. A. 629. Crediting the amounts to the fund in petitioner's books was not a payment of the amounts. *Barto Co.*, 21 B. T. A. 1197; *Fred W. Leadbetter, supra*. The entire fund, income, principal, and accretions, remained in petitioner's possession and control throughout the taxable years, commingled with its other investment assets.

The argument is made by the petitioner that the fund constituted a legal trust entity such as is contemplated by section 165 of the 1932 and 1934 Acts which exempts such trusts from taxation.

This argument goes to petitioner's contention that the income (interest) derived from the staff pension fund was trust income and therefore should be excluded from petitioner's gross income.

The staff pension fund was created not by any express trust agreement, but rather by the adoption of a corporate bylaw. It was administered not by "trustees", but by a "committee" appointed annually by the board of directors. The rules and regulations governing the administration of the fund were subject to amendment at any time by the board of directors, except that by such amendment the petitioner could not acquire any greater rights to the return of grants already credited to the fund than called for in the original agreement. The board of directors had the power to wind up the fund at any time.

We do not think that either the agreement under which it was created or the manner in which the fund was managed established any sound basis for the petitioner's contention that the fund constituted a separate trust entity. See *Merrill Trust Co.*, 21 B. T. A. 1409; *Caxton Printers, Ltd.*, 27 B. T. A. 1110. Cf. *Elgin National Watch Co.*, 17 B. T. A. 339.

Petitioner's contentions that the amounts allocated to and credited in its books to the staff pension fund should be either excluded or deducted from its gross income are not sustained.

7. This issue is whether amounts which the petitioner credited to a "shareholders' fund" during the years 1932, 1933, and 1934 are deductible from gross income as interest paid or accrued within the taxable years.

During the years involved the petitioner maintained and managed a shareholders' fund such as is authorized by section 80 of the Canadian and British Insurance Companies Act of 1932, as amended, to which it credited in its books interest of $19,317.54 in 1932, $24,927.59 in 1933, and $31,479.56 in 1934.

The shareholders' fund was commingled with and invested along with other funds of the petitioner and the amount earned thereon was computed at the average net rate of interest earned in the preceding year upon the mean invested funds of the petitioner.

In petitioner's annual statements the shareholders' fund is set up separately from paid-up capital and surplus and the interest credited to the fund is separate from the portions of petitioner's profits set apart or paid to the shareholders as dividends.

In determining the deficiencies herein the respondent did not allow any deduction in respect of the above amounts credited to the shareholders' fund.

This issue involves substantially the same question as that determined in issue 6 above. In accordance with our determination in that issue we hold that the petitioner is not entitled to the deduction of the amounts of interest credited during the taxable years 1932, 1933, and 1934 to the shareholders' fund.

Reviewed by the Board.

*Decision will be entered under Rule 50.*