1180 East 63rd Street Building Corporation, Petitioner. *v.*
Commissioner of Internal Revenue, Respondent.

Docket No. 15731.   Promulgated March 25, 1949.

*J. Roy Browning, Esq.*, for the petitioner.
*Jackson L. Boughner, Esq.*, for the respondent.

438

OPINION.

KERN, *Judge*: Petitioner strenuously urges that, although by the various court actions its *in rem* liability for delinquent real estate taxes

was satisfied,[2] there still remained outstanding its personal liability for such unpaid amounts.[3]   As a consequence, it argues that it should not be required to report as income that part of the amount of delinquent taxes for 1939 and 1940 which were accrued as deductions in each of those years and which resulted in tax savings, for until all liability therefor was extinguished [4] there could be no tax benefit under section 22 (b) (12) of the Internal Revenue Code.[5]

Respondent contends that by the foreclosure proceeding more than the petitioner's *in rem* liability was extinguished.  He argues that under applicable Illinois law petitioner could, under no circumstances, be liable for over one-half the taxes, since it was the fee owner of only one-half of the real estate; that it is extremely doubtful that any personal liability survived; that if it did survive the foreclosure proceeding it did not survive the injunction proceeding; and that, in any event, assuming that any personal liability is extant, the possibility of action for recovery being undertaken is so contingent, speculative, and remote that for all practical purposes it must be concluded that it does not exist.

The parties have not cited, nor have we been able to discover, any convincing authorities on whether in Illinois a personal action for delinquent taxes survives a foreclosure proceeding and redemption

---

[2] Under Illinois law, the owner of property on the first day of April in any year is liable for the taxes of that year.   The taxes upon real property, together with all penalties, interest, and costs that may accrue thereon, are a prior and first lien on the property, which lien may be foreclosed in equity, when taxes for two or more years on the property shall have been forfeited to the state.   Jones, Illinois Stat. Ann., 119.525, 119.713, §§ 28, 216.

[3] Personal liability for unpaid real estate taxes and the state's right to sue thereon arises out of Jones, *op. cit., supra,* 119.772, § 275, which provides in part, as follows:

"The county board may, at any time, institute suit in a civil action in the name of the People of the State of Illinois in any court of competent jurisdiction for the whole amount due for taxes and special assessments on forfeited property   *   *   *."

[4] In Illinois, action of debt by the people to recover taxes is not barred by the statute of limitations.   *Greenwood* v. *Town of LaSalle,* 137 Ill. 225;   26 N. E. 1087;   *People* v. *Hibernian Banking Assn.,* 245 Ill. 522; 92 N. E. 305.

[5] (b) Exclusions from Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

*       *       *       *       *       *       *

(12) Recovery of Bad Debts, Prior Taxes, and Delinquency Amounts.—Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.   *   *   *

*       *       *       *       *       *       *

(B) Definition of Prior Tax.—The term "prior tax" means a tax on account of which a deduction or credit was allowed for a prior taxable year.

*       *       *       *       *       *       *

(D) Definition of Recovery Exclusion.—The term "recovery exclusion", with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or deliquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph.

*       *       *       *       *       *       *

therefrom.[6]  The problem here is further complicated by the subsequent injunction proceeding and court decree enjoining the collection of further delinquent taxes out of the property.[7]   Certain principles have, however, been established by the Illinois courts, and certain requirements under the statutes must be met which underscore the improbability of the existence of a right in the taxing body to bring a personal action for delinquent taxes under the facts presented to us.  First, it has been held that section 275 of the Illinois Revenue Act [8] "provides the exclusive methods of enforcing an owner's personal liability for real estate taxes."  *School District No. 88* v. *Kooper*, 380 Ill. 68; 43 N. E. (2d) 542.   Second, in the construction of the state taxing statutes, where doubt as to meaning and scope exists, "They must be construed strictly against the Government and in favor of the taxpayer, and will not be extended by implication."  *French* v. *Toman*, 375 Ill. 389; 31 N. E. (2d) 801.   And, third, the statute itself sets up certain conditions that must obtain before suit for personal judgment could be brought; there must be, under the statute, an "amount due for taxes  *  *  *  on forfeited property."

The county records, to which reference would be made to determine whether there were unpaid taxes due, would reveal in this instance that there were no unpaid taxes due for 1939 and 1940.  The county clerk "has the power to cause his records to show a tax paid.   He is a public officer and is presumed to perform his duty.  *  *  *  He is conclusively presumed to have complied with the law  *  *  *."  *Jackson Park Hospital Co.* v. *Courtney*, 364 Ill. 497; 4 N. E. (2d) 864.  Moreover, there appears to be no compliance with the requirement that forfeiture must be established to sustain a suit *in personam.   Smith* v. *People*, 3 Ill. App. 380.  After its redemption by petitioner, this property was no longer "forfeited property."   Cf. *People* v. *Henckler*, 137 Ill. 580; 27 N. E. 602.   Neither of the conditions precedent, as recited in the statute, appear to be established.

The absence of any controlling authorities on the point is explicable because of the policy of the state's attorney in not essaying to commence actions for personal liability after foreclosure, sale, and issuance of an injunction decree.

---

[6] Cf. 3 Cooley, The Law of Taxation (4th Ed.), p. 2633: "*  *  *  it is generally held that the remedies are cumulative."

But cf. *People* v. *Courtney*, 380 Ill. 171 ; 43 N. E. (2d) 382: "It is also complained that the State's Attorney did not bring a suit for a personal judgment against defendant  *  *  * or the prior owners of the property in the same proceeding in which the tax lien was foreclosed.  *We are not convinced from anything pointed out in appellants' brief that such an action could be taken,* but even if possible, it was still a matter of discretion for the State's attorney to bring one or several suits to enforce liens or obtain personal judgment to enforce tax delinquencies."   (Italics supplied.)

[7] The customary independent injunction suit [is] to clear title following redemption from an equity tax foreclosure."  19 Chicago Kent L. Rev. 310.

[8] The applicable section is set out, in part, in footnote 2, *supra.*

Even if we were to assume, *arguendo*, favorably to petitioner, upon this murky question of law and consider that the extinguishment of *in rem* liability by the foreclosure and sale did not extinguish every vestige of personal liability, it is manifest that under Illinois law and practice whatever liability could be said to have remained was gossamer and flimsy, and for practical purposes was nonexistent.[9] Particularly is this so where the state's attorney has never attempted collection of unpaid taxes after a foreclosure sale followed by a decree enjoining collection, and has adopted the policy of not attempting such suits. It then must follow that in 1942 there was "enough objective probability that the amount would be retained to justify an accrual of the income involved." Magill, Taxable Income (Rev. Ed.), p. 206. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. At best, only a remotely contingent liability to pay additional amounts for 1939 and 1940 real estate taxes could be said to remain; and income "subject only to an unliquidated contingent liability" must be returned for Federal income tax purposes. *D. H. Byrd*, 32 B. T. A. 568. See also *George Hyatt*, 36 B. T. A. 121; *Boston Consolidated Gas Co.*, 44 B. T. A. 793; affirmed on this issue, 128 Fed. (2d) 473.

Petitioner's own actions in 1942 lend further support to this view. Although bookkeeping entries are generally not controlling in the determination of when an item of income is accruable, *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, 223, they have been accorded vital significance in situations similar in principle to that presented to us. Book entries charging unclaimed wages, overcharges, and deposits to profit and loss or to surplus were given determinative effect in *Chicago, Rock Island & Pacific Ry. Co.* v. *Commissioner* (CCA-7), 47 Fed. (2d) 990; certiorari denied, 284 U. S. 618, in *Charleston & Western Carolina Railway Co.* v. *Burnet* (App. D. C.), 50 Fed. (2d) 342, and in *Boston Consolidated Gas Co.*, *supra*. See 2 Mertens, Law of Federal Income Taxation, § 12.77. In 1942 petitioner wiped from its books its liability for delinquent taxes for 1939 and 1940, and increased its surplus account thereby. This was apparently done with the realization that for all practical purposes such liability ceased. Equally significant is the action of petitioner in expending approximately $6,000 in fees and costs in the court actions, seeking the settlement of its delinquent tax liability. If petitioner were not convinced that its liability was erased, it is improbable that it would have expended such sum in the court actions in 1942. The sum would have been better utilized in reducing the liability which it now seeks to have us find.

---

[9] And "Taxation, as it many times has been said, is eminently practical * * *." *Tyler* v. *United States*, 281 U. S. 497, 503.

Petitioner next urges that, if all liability was actually extinguished, then under the doctrine of *Helvering* v. *American Dental Co.*, 318 U. S. 322, the unpaid balance of real estate taxes was canceled or forgiven voluntarily and gratuitously, and, therefore, it was not taxable income. Assuming, contrary to petitioner's argument under the principal issue, that the real estate tax debt was discharged in full, we are of the opinion that, under the facts, the principle of the *American Dental* case is inapplicable, and that this phase of the proceeding falls within the ambit of *Commissioner* v. *Jacobson*, 336 U. S. 28. The only provision of the code under which the discharged tax debt could be excluded from petitioner's income would be section 22 (b) (3), which formed the basis of the opinion in the *American Dental* case. The *Jacobson* case materially assists in assaying the meaning and scope of that section, particularly in its relationship to section 22 (a) of the code.[10] It was there observed:

* * * Both the general provision for taxation of income and this provision for the exclusion of gifts from gross income, for income tax purposes, have been in the Federal Income Tax Acts in substantially their present form since the Revenue Act of 1916. The contrast between the provisions is striking. The income tax is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively. The exemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the same policy. * * *

We learn further from the *Jacobson* case that, before there can be a discharge or cancellation cognizable under section 22 (b) (3), there must be discovered an "intent * * * to make a gift in contradiction of the natural implications arising" from the transaction under review, and that "The situation in each transaction is a factual one."

Not only the "natural implications," but the facts themselves buttress our conclusion that, if there was a complete discharge of liability, it was not a "release of something * * * for nothing" and it was not "gratuitous." *Helvering* v. *American Dental Co.*, *supra*. In addition, it may be pointed out that the ultimate discharge resulted not alone from negotiations between petitioner and the taxing authorities, but also from the court proceedings. Cf. *Annis Van Nuys Schweppe*, 8 T. C. 1224; affd., 168 Fed. (2d) 284. We also note the

---

[10] (a) GENERAL DEFINITION.—"Gross income" includes gains, profits and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Section 22 (b) (3) is to the following effect:

"(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(3) GIFTS, BEQUESTS, DEVISES, AND INHERITANCES.—The value of property acquired by gift, * * *"

unlikeliness of officials charged with the collection of state taxes having the intent of making a gift to taxpayers.

Respondent's action in increasing petitioner's gross income for 1942 by $6,340.42, under the provisions of section 22 (b) (12), is approved.[11] Cf. *Hurd Millwork Corporation*, 44 B. T. A. 786.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[11] Regulations 111, sec. 29.22 (b) (12)–1 (a) (2) provides, in part: "Recoveries result from the receipt of amounts in respect of the previously deducted or credited section 22 (b) (12) items, such as * * * refund or credit of taxes paid, or cancellation of taxes accrued * * *." See H. Rept. No. 2333, 77th Cong., 2d sess., pp. 69, 70:

"The term 'recovery of a tax' includes * * * the cancelation of a purported tax liability which was accrued and deducted for a prior taxable year but never previously paid."