STANDARD BRASS & MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35644. Promulgated May 18, 1953.

*Peter B. Wells, Esq.*, for the petitioner.
*Joseph P. Crowe, Esq.*, for the respondent.

374

### OPINION.

JOHNSON, *Judge:* The amount of $34,715.48 in controversy represents the difference between the original license rates and the ones agreed upon in March 1948, retroactive to the time of execution of the agreement. Royalties at the original rates were accrued each year, except for March 1948, for which period the accrual was on the basis of the adjusted rates, and the amounts so accrued were claimed as expense deductions in the year of accrual. No contention is made that the accruals were disallowed as deductions by the respondent.

Petitioner's contention in general is that the balance due Sandusky on its books was gratuitously forgiven by its creditor and, therefore, did not result in realization of taxable income, as determined by the respondent. Respondent's position is that the transaction was a settlement made under the contract in the exercise of sound business judgment, and, accordingly, no gift was made.

A like question, under different facts, was considered in *Helvering* v. *American Dental Co.*, 318 U. S. 322. There the Court held that "The forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute." The decision must be viewed in the light of *Commissioner* v. *Jacobson*, 336 U. S. 28, "which tells us that there can be a gift only when the intent to make a gift is present"; *Denman Tire & Rubber Co.*, 14 T. C. 706, 714, affd. 192 F. 2d 261. "* * * The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively. The exemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the same policy. * * *" *Commissioner* v. *Jacobson*, *supra*, in which the Court also said that the question is factual and "turns upon whether the transaction is in fact a transfer of something for the best price available or is a transfer or release of only a part of a claim for cash and of the balance 'for nothing,' " and that intent to make a gift must be present to escape tax on the transaction. *1180 East 63rd Street Building Corporation*, 12 T. C. 437.

The lack of intent of Sandusky to make a gift is evident from the facts. The contract, executed in February 1940, made express provision for adjustment of the royalty rates every 2 years commencing 2 years after the installation of the first machine "in accordance with competitive and economic conditions then existing," the adjustment, if necessary, to be made by the American Arbitration Association. The first machine was installed in January 1941 and royalties were not chargeable under the contract until January 1943.

Promptly after the machine was placed in operation petitioner realized that the royalty rates were excessive and while the then president of Sandusky agreed with the conclusion, he declined and thereafter continued to refuse to make a downward adjustment. Negotiations conducted with Buckingham, a new president of Sandusky, resulted in an understanding at some undisclosed time between May 1944 and January 1945, subject to approval of Sandusky's directors, to reduce the rates to the figures ultimately agreed upon. Settlement involved other matters covered by the contract, a conference to discuss which was suggested by Buckingham in January 1945, when he suggested also that liability for royalty be accrued at the rates finally made offi-

cial. The royalty rates informally fixed by Buckingham were accepted by Sandusky's directors in March 1948, retroactive to all prior years. In the meantime, petitioner accrued liability and took deductions therefor at the original rates but paid to Sandusky amounts computed on the basis of royalty fixed by the settlement.

It thus appears that the adjustment of liability resulted from orderly negotiation of rights and obligations arising from contract, a situation anticipated by the parties when the licensing agreement was executed. Instead of giving up something for nothing, which is an essential element of a gift (*Roberts* v. *Commissioner*, 176 F. 2d 221; *Pacific Magnesium, Inc.* v. *Westover*, 86 F. Supp. 644, affd. 183 F. 2d 584), Sandusky merely acknowledged a contractual right of petitioner to a reduction of the rates of royalty, a strictly business transaction containing none of the characteristics of a gift.

From consideration of all of the facts we find no error in the determination of respondent that the settlement resulted in realization of income by petitioner in the amount of $34,715.48.

*Decision will be entered for the respondent.*