H.L.S. EXCAVATING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
H. L. S. Excavating v. Commissioner
Docket No. 14493-79.
United States Tax Court
T.C. Memo 1982-454; 1982 Tax Ct. Memo LEXIS 298; 44 T.C.M. (CCH) 732; T.C.M. (RIA) 82454; August 4, 1982. *298 Held: Income from a contract between P and a contractor was not properly accruable in its taxable year ended April 30, 1976, as all events which fixed its right to the income did not occur prior to the close of its taxable year. Jean Schanen, for the petitioner. Thomas Tomashek, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $17,186.32 [1] in petitioner's income tax for the year ended April 30, 1976. The sole issue presented for our consideration is whether income from a contract between petitioner and Edward J. Neuser d/b/a Frontier Construction Company was properly accruable in petitioner's fiscal year ended April 30, 1976. *299 FINDINGS OF FACT Some of the facts have been stipulated. These facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners H.L.S. Excavating (hereinafter petitioner) is a corporation whose principal office was in Wasilla, Alaska, at the time of the filing of the petition herein. Its United States Corporation Income Tax Return for the fiscal year ended April 30, 1976, was filed with the Ogden Service Center, Ogden, Utah. Petitioner used the accrual method of accounting in the preparation of its return for the year ended April 30, 1976. In 1977 petitioner changed its method of accounting to the cash receipts and disbursements method. Petitioner is engaged in the business of excavation. Between January 1, 1976, and April 30, 1976, petitioner orally contracted with Edward J. Neuser d/b/a Frontier Construction Company (hereinafter Neuser) for the excavation and removal of peat on land being developed by Aria Hills Development, Inc. (hereinafter Aria Hills). Pursuant to the contract the payment of $30,000 by Neuser to petitioner for petitioner's services was not expected until the later of the completion of the services or payment *300 by Aria Hills to Neuser. Neuser had contracted with Aria Hills to perform services, including excavation and removal of peat. Petitioner and Neuser envisioned the completion of services prior to April 30, 1976. Services were performed pursuant to contract in April of 1976 but inclement weather caused a cessation of work prior to April 30, 1976. Petitioner's equipment was left in place at the project even though there was a work stoppage. In May of 1976 petitioner was notified by Neuser that Aria Hills was experiencing financial difficulties. Petitioner removed its equipment from the jobsite immediately thereafter and no further work was performed on the project. On July 22, 1976, petitioner filed a lien in the amount of $27,946.27 (plus interest at 6 percent) against the property upon which services were performed. This amount represented the alleged value of labor, equipment and other expenses incurred by petitioner in connection with the project. On October 19, 1976, Neuser filed a lien foreclosure complaint in the Superior Court of the State of Alaska for the Third Judicial Circuit, naming the owner of the property, Aria Hills, as well as others having an interest *301 in the property (including petitioner) as defendants. Petitioner filed an answer, counterclaim and cross-claim to the complaint on November 9, 1976, alleging that it provided labor and equipment valued at $27,946.67 respecting the development and that a lien for that amount plus interest at 6 percent had been filed against the property. The suit was dismissed by agreement of the parties in August of 1977 and on August 29, 1977, petitioner received a check for $30,412.17 in settlement of its claim. Petitioner was an accrual basis taxpayer for the year ended April 30, 1976. Petitioner's bookkeeper entered $30,000 as income from the Aria Hills project on the corporate books for the year ended April 30, 1976. That entry was made in April of 1976 because at that time it was anticipated that the job would be complete before the end of petitioner's fiscal year. Another consideration for the $30,000 entry was that year-end financial statements were to be used by petitioner in acquiring a bank loan. Sometime after April 30, 1976, but prior to the filing of petitioner's tax return for the year ended April 30, 1976, petitioner's bookkeeper made a reversing entry to remove the $30,000 *302 from income. The entry was made because in the view of petitioner's accountant the income could not be properly accruable as the job was not completed prior to the close of the fiscal year. The income from the Aria Hills project was not reported on petitioner's income tax return for the year ended April 30, 1976. However, expenses attributable to the project were accrued and deducted on that return. Petitioner made no effort to collect the $30,000 debt from Neuser until November 9, 1976, when it filed its answer, counterclaim and cross-claim to Neuser's lien foreclosure complaint. For the fiscal year ended April 30, 1977, petitioner requested and received permission to change its method of accounting from the accrual method to the cash receipts and disbursements method. In his notice of deficiency dated August 1, 1979, respondent determined that the $30,000 income from the Aria Hills project was properly accruable in petitioner's fiscal year ended April 30, 1976. [2]
*303 OPINION Section 451[3] provides that the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. Under an accrual method of accounting, income is includible in gross income when all events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Section 1.451-1(a), Income Tax Regs.; Spring City Foundry Co. v. Commissioner,292 U.S. 182 (1934). The parties herein have stipulated that petitioner was an accrual basis taxpayer for the year in issue. During that year petitioner contracted with Neuser for the removal of peat from land being developed by Aria Hills. The contract called for the payment of $30,000 to petitioner *304 upon the later of the completion of the peat removal project or the payment to Neuser by the developer, Aria Hills. Petitioner envisioned completion of the project prior to April 30, 1976, the end of its fiscal year. In fact, petitioner's bookkeeper entered $30,000 as income from the project on the corporate books for the year ended April 30, 1976. However, inclement weather caused a work stoppage prior to April 30 and the project was not completed by the end of petitioner's fiscal year. In May of 1976 petitioner was notified by Neuser that Aria Hills was experiencing financial difficulties. No further work on the project was performed. After filing a lien against the property for services performed, petitioner received a check of $30,412.17 ($27,946.27 plus 6 percent interest) in August of 1977 in settlement of its claim. Respondent maintains that because petitioner performed all of the work that it would ever perform on the contract during the year ended April 30, 1976, the income from that contract was accruable in that year despite its receipt in August of 1977. Petitioner argues that all events necessary to fix its right to the income had not occurred on or before *305 April 30, 1976. It alleges that at the close of its tax year the job was not completed and both parties expected further performance on the part of petitioner before the right to its lump sum contract payment would accrue. [4] Accordingly, petitioner asserts that the income from the peat removal contract should not be accrued in its taxable year ended April 30, 1976. We agree with petitioner. It is a well settled principle of tax law that each taxable year must be treated as a separate unit and all items of gross income and deductions must be reflected in terms of their posture at the close of such year. United States v. Consolidated Edison Co. of New York,366 U.S. 380, 384 (1961); Burnet v. Sandford & Brooks Co.,282 U.S. 359 (1931). The propriety of an accrual must be judged by the facts which the taxpayer knew or could reasonably be expected to know at the end of its taxable year. Camilla Cotton Oil Co. v. Commissioner,31 T.C. 560, 567 (1958); County Club Estates, Inc. v. Commissioner,22 T.C. 1283, 1294 (1954). *306 Thus, accrual method taxpayers properly accrue income for the taxable year when it is determined at the close of such year that the "all events" test for its accrual has been met. Accrual is not proper when a contingency or unreasonable uncertainty qualify the taxpayer's right to payment. Commercial Solvents Corp. v. Commissioner,42 T.C. 455, 469 (1964); San Francisco Stevedoring Co. v. Commissioner,8 T.C. 222, 225 (1947). In the instant case, petitioner's right to moneys attributable to the peat removal project had not ripened by the close of its taxable year on April 30, 1976. Its right to receive payment was conditioned on completion of the work and payment to Neuser by Aria Hills. The record reveals that at the close of petitioner's taxable year work on the project was halted by inclement weather. Petitioner kept its equipment at the project with the hope of completing its work upon the onset of better weather conditions. It was only in May of 1976 that petitioner became aware of the developer's financial straits, whereupon petitioner removed its equipment from the jobsite. Thus, when focusing upon the end of petitioner's taxable year *307 it is apparent that its right to payment was not yet ripe in view of its failure to complete the services. Accordingly, the income from the peat removal contract was not accruable in petitioner's taxable year ended April 30, 1976. Respondent is seemingly urging upon us a retrospective theory of accounting, wherein petitioner would accrue the income in the year ended April 30, 1976, on the basis that as events transpired all work on the contract was performed prior to April 30, 1976. Respondent, quite clearly, is attempting to utilize facts which were unknown at the end of petitioner's taxable year in order to characterize petitioner's status respecting its service contract. [5] This attempt most assuredly runs afoul of the accrual method of tax accounting. Respondent highlights the fact that petitioner's accountant accrued $30,000 of income from the contract on the *308 corporate books for the year ended April 30, 1976. Thus, it is argued that the information to compute petitioner's income was in its books on April 30, 1976, and should have been returned accordingly. Facts and not bookeeping entries control in the determination of whether an item is income on the accrual basis. United Grocers,Ldt. v. United States,308 F.2d 634, 641 (9th Cir. 1962). See Concord Village, Inc. v. Commissioner,65 T.C. 142, 158 (1975). The facts herein indicate that at the end of petitioner's fiscal year, it was enticipated that additional services would be performed on the project and accordingly the contract was not completed. Furthermore, although bookeeping entries may be evidential, 1180 East 63rd Street Building Corp. v. Commissioner,12 T.C. 437 (1949), we have found that the entry accruing income from the contract was made at a time when petitioner anticipated that the job would be completed prior to the end of its *309 taxable year. Additionally, petitioner envisioned the use of year-end financial statements in obtaining a loan. Accordingly, the entry was made somewhat prematurely in order to improve petitioner's financial picture as reflected on its financial statements. Thus, any inference which we might otherwise draw from such an entry or any notion that the entry reflects an admission against interest must be rejected. For the reasons detailed above, the income from the contract between petitioner and Neuser was not properly accruable in petitioner's taxable year ended April 30, 1976. Decision will be entered for petitioner.
Footnotes
1. This deficiency is based on respondent's contention that petitioner omitted $30,000 in gross receipts. In his brief respondent states: The Respondent concedes that the contract was not fully performed by the petitioner, and thus the adjustment in the statutory notice of deficiency increasing the petitioner's income by the full $30,000 contract price is incorrect. However as of the close of the year ended April 30, 1976, the amount of income was determinable with reasonable accuracy as evidenced by the lien and subsequent settlement. The correct adjustment to income should be $27,866.67. The parties have stipulated that the amount of the lien was $27,946.67. This amount consists of labor and equipment at $27,866.67 and $80 for expenses for preparation and filing the lien.↩
2. In his notice of deficiency respondent asserted alternatively that a $30,000 reduction in petitioner's gross receipts was improper because it was not shown that the $30,000 debt from Neuser became worthless during the fiscal year ended April 30, 1976. The parties have stipulated that petitioner made no effort to collect the $30,000 from Neuser until November 9, 1976. There was no other evidence introduced pertaining to this issue and the parties do not address it on brief. Moreover, petitioner has not disclosed in his petition facts supporting his objection to this alternative position. See Rule 34(b)(5), Tax Court Rules of Practice and Procedure; Klein v. Commissioner,45 T.C. 308, 310↩ (1965). Thus, it is evident that the parties have not presented this issue for our determination and accordingly, we do not address it.
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
4. See footnote 1, supra.↩
5. We note that the rights eventually asserted by petitioner resulting from the performance of services arose from the remedies available upon the breach of a contract and not from its rights under the contract. Thus, at April 30, 1976, its right under the contract was not fixed nor was it thereafter fixed.↩