HELVERING, Commissioner of Internal Revenue, v. MISSOURI STATE LIFE INS. CO.

MISSOURI STATE LIFE INS. CO. v. HELVERING, Commissioner of Internal Revenue.

Nos. 10119, 10143.

Circuit Court of Appeals, Eighth Circuit. July 24, 1934.

Patrick J. Hurley, of Washington, D. C. (Earl Whittier Shinn and H. B. Mc-Cawley, both of Washington, D. C., on the brief), for Missouri State Life Ins. Co.

Edward H. Horton, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

SANBORN, Circuit Judge.

These are petitions to review an order of the Board of Tax Appeals, redetermining deficiencies in the income taxes of the Missouri State Life Insurance Company for the years 1928 and 1929. 29 B. T. A. 401. In his petition (No. 10119) the Commissioner challenges the ruling of the Board that amounts held by the taxpayer to meet its obligations to the holders of matured unsurrendered and unpaid coupons attached to certain policies of life insurance known as "premium reduction coupon policies" constituted "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Act of 1928 (26 USCA § 2203 (a) (2). It is now conceded that the Board reached an incorrect conclusion in this regard and that the question is ruled by Helvering, Commissioner v. Inter-Mountain Life Insurance Co. (U. S.) 55 S. Ct. 572, 79 L. Ed. 1227, opinion filed April 1, 1935.

The questions presented by the petition of the taxpayer in No. 10143 may be briefly and generally stated as follows:

1. Was the taxpayer required to include in gross income for the years in question accrued interest on defaulted mortgage loans, where the mortgaged property was acquired by the taxpayer at mortgage foreclosure sale for the full amount of the loan and accrued interest, or where the taxpayer, in lieu of foreclosure, accepted from the mortgagor a conveyance of the mortgaged property and released him from liability under his note and mortgage, regardless of the value of the property acquired?

2. Was the taxpayer entitled to deduct from gross income for the years in question amounts representing interest upon accumulated dividends paid to the holders of certain deferred dividend policies?

3. Was the taxpayer entitled to deduct from its gross income taxes paid upon real estate where the taxes paid had accrued and were liens upon the real estate prior to the time of its acquisition by the taxpayer?

4. Was the accrued interest on various bonds and loans acquired by the taxpayer from the International Life Insurance Company under a reinsurance agreement, and subsequently paid to the taxpayer during the years in question, a part of its gross income?

The questions will be discussed under the following headings:

Accrued interest upon mortgages on acquired lands.

Interest on deferred dividends.

Accrued taxes on lands acquired.

Accrued interest on loans of reinsured company.

The applicable statute is the Revenue Act of 1928 (45 Stat. 842 et seq., § 201 et seq., 26 USCA § 2201 et seq.) which continues in effect the plan for taxing life insurance companies adopted by Congress in 1921 (Revenue Act 1921, § 242 et seq., 42 Stat. 261 et seq.) The companies are taxed upon the basis of their net investment income, excluding capital gains and losses as well as profits and losses from underwriting. The gross income includes only interest, dividends, and rents. Among permissible deductions are an amount equal to 4 per cent. of the mean of the "reserve funds required by law," an amount equal to 2 per cent. of any sums held as a reserve for dividends the payment of which is deferred for a period of not less than five years from the date of the policy, taxes paid "exclusively upon or with respect to the real estate owned by the company," and "all interest paid or accrued within the taxable year on its indebtedness." Revenue Act 1928, § 203, 26 USCA § 2203.

### Accrued Interest Upon Mortgages on Acquired Lands.

The taxpayer foreclosed defaulted mortgages upon real estate, and bid in the property at foreclosure sale for an amount equal to the full amount of the mortgage debt and interest. In some cases, in lieu of foreclosure, the taxpayer accepted deeds of the mortgaged property from its mort-

gagors, and released them from the mortgage debt. The taxpayer's contention is that in either event the accrued interest was not paid unless the land acquired was worth as much as the mortgage debt and interest.

When mortgaged property is sold on foreclosure for an amount sufficient to pay the mortgage debt with accrued interest, the mortgagee has received payment in full of its debt, and that is so, regardless of whether the highest bidder at the sale is the mortgagee or a stranger. Where a stranger buys, he pays cash to the officer making the sale, who pays it to the mortgagee. Where the mortgagee buys the property, instead of paying cash to the officer and receiving it back, he credits the amount which he, as purchaser, bids, upon the mortgage debt. In either event, he receives payment in cash or its full equivalent. National Life Ins. Co. v. United States (Ct. Cl.) 4 F. Supp. 1000, certiorari denied Lucey v. United States, 291 U. S. 683, 54 S. Ct. 560, 78 L. Ed. 1070; Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729; Silver v. Wickfield Farms, Inc., et al., 209 Iowa, 856, 227 N. W. 97, 99; Appeal of Manomet Cranberry Company, 1 B. T. A. 706, 709; Ewen MacLennan v. Commissioner of Internal Revenue, 20 B. T. A. 900.

The same rule, however, does not, we think, apply to a surrender by the mortgagor to the mortgagee of the mortgaged real estate in consideration of the forgiveness of the indebtedness. The mortgagee in such a case exchanges the loan for the land. If the land is worth as much or more than the amount due upon the loan with accrued interest, the exchange results in the equivalent of payment in full, but not otherwise. Certainly, the accrued interest upon a mortgage is not paid by the acceptance of mortgaged property which is worth less than the principal of the loan. Such a transaction produces no income to the mortgagee. That the insurance company, in lieu of foreclosure, takes the land and releases the mortgagor from liability, and carries the land on its books at the full amount which it has invested in the land, namely, the debt and accrued interest, does not justify the conclusion that accrued interest has been paid. Bookkeeping entries do not constitute income. Doyle v. Mitchell Brothers Company, 247 U. S. 179, 187, 38 S. Ct. 467, 62 L. Ed. 1054; Douglas et al. v. Edwards (C. C. A. 2),

298 F. 229; In re Sheinman (D. C. E. D. Pa.) 14 F.(2d) 323; Young Iron Works v. Commissioner, 21 B. T. A. 1238. It is the interest actually received in cash or its equivalent which is to be returned as gross income. If the rule were otherwise, a life insurance company, all of the loans of which were in default and which was obliged to take over from its mortgagors mortgaged lands of little value in order to save the expense and delay of foreclosure, would be in the same situation with respect to interest received as though all of its loans were good and the interest had been paid in cash.

### Interest on Deferred Dividends.

The taxpayer issued a class of semi-tontine policies. Dividends were not to be paid upon these policies annually, but were to be accumulated. If the insured was living at the end of the twentieth policy year, he was to receive his proportion of the accumulated dividends. If he died prior to that time, his beneficiary received only the face of the policy. The dividends which the insured would have received had he lived until the end of the twentieth year went to swell the fund available to others of his class who would receive dividends. The taxpayer sought to take deductions for so much of the accumulated dividends paid to holders of such policies during 1928 and 1929 as represented interest, on the theory that this was interest paid upon an indebtedness of the taxpayer. The Commissioner refused to allow the deduction. In doing so, he was clearly correct. The liability of the taxpayer for the dividends was a contingent policy liability. To meet that liability for dividends when it matured, the taxpayer was required to maintain a reserve. The reserve was no doubt accumulated at a certain rate of interest each year, just as other reserves are accumulated. Until an insured reached his twentieth policy year and became entitled to receive the accumulated dividends, the liability of the insurer on that particular policy was not an indebtedness to the insured, but was in the nature of a reserve liability of the insurer. If, after the twentieth year, the insured elected to leave at interest with the insurer the share of the accumulated dividends to which the insured was then entitled, interest thereafter paid would be interest upon indebtedness. The Seventh Circuit in Commissioner v. Lafayette Life Insurance Co. (C. C. A.) 67 F.(2d) 209, held to the contrary, but we think the ex-

act nature of the liability of the insurer was not made clear to the court in that case. As to what constitutes "indebtedness" or a "debt," see City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 20, 19 S. Ct. 77, 43 L. Ed. 341; Guaranty Trust Co. of New York v. Galveston City R. Co. et al. (C. C. A. 5) 107 F. 311, 317; Saleno v. City of Neosho, 127 Mo. 627, 30 S. W. 190, 192, 27 L. R. A. 769, 48 Am. St. Rep. 653; State ex rel. City of Hannibal v. Smith, State Auditor (Mo. Sup.) 74 S.W.(2d) 367, 372; 17 C. J. 1377.

### Accrued Taxes on Lands Acquired.

██ Accrued taxes and assessments upon lands acquired by the taxpayer and paid by it subsequent to acquisition we think were not taxes "paid during the taxable year exclusively upon or with respect to the real estate owned by the company" within the meaning of the act. Revenue Act 1928, § 203 (a) (6), 26 USCA § 2203 (a) (6). These taxes were assessed and had become liens upon the lands while in other ownership. The taxpayer took them subject to the lien of the taxes. The liens were in a sense a part of the capital expenditures for the acquisition of the lands, and hence they did not, in a proper sense, pertain to the investment expenditures of the company to be used in determining net income. These taxes stand on an entirely different basis than taxes on real estate accruing after acquisition. Leamington Hotel Company v. Commissioner, 26 B. T. A. 1004; First Bond and Mortgage Company v. Commissioner, 27 B. T. A. 430; Grand Hotel Co. v. Commissioner, 21 B. T. A. 890; Texas Coca-Cola Bottling Company v. Commissioner, 30 B. T. A. 736.

### Accrued Interest on Loans of Reinsured Company.

██ In 1928 the taxpayer reinsured the business of the International Life Insurance Company. Under the reinsurance agreement, that company sold to the taxpayer all of its business and assets. The taxpayer reinsured all of the life and annuity policies of the International, assumed all of its obligations, with certain unimportant exceptions, and agreed to carry on the reinsured business. The agreement recognized that the liabilities exceeded the assets. The taxpayer agreed to keep a separate account of the business reinsured and to apportion future earnings or profits 25 per cent. to the International and the balance to the reduction of the deficit so long as the balance sheet showed a deficit. When a surplus was shown, the taxpayer was to pay 75 per cent. thereof to the International and 25 per cent. to itself, the payments to the International to continue until $5,625,-000, with interest, should be paid or until fifteen years from the date of the semiannual balance sheet in which a surplus should first appear had expired. After that time, all profits were to belong to the taxpayer. The taxpayer was to liquidate all assets to the best advantage, and at not less than their book value unless approved by a committee.

The United States District Court for the Eastern District of Missouri, which had appointed receivers for the International, approved this contract of reinsurance. In approving the contract, the court found that the capital of the International was greatly impaired and its continuation in the life insurance business would be hazardous to its policyholders. It also found that no contract of reinsurance could be made "unless the assets of the said Company be transferred to a reinsuring company engaged in the life insurance business."

Among assets transferred to the taxpayer were loans upon which interest had accrued. This interest was subsequently paid. The Commissioner treated the interest accrued, as income of the taxpayer. The taxpayer contends that it was not income, but a capital asset.

We think that the accrued interest on the loans transferred to and purchased by the taxpayer did not constitute income to it. True, it took over the business of the International and agreed thenceforth to conduct it, but not as the agent of the International. The consideration for the taxpayer's promise to reinsure, to assume all liabilities, and to account for profits, if any, was the transfer of the assets, including the accrued interest on loans. Had it paid cash for these assets, the situation would have been no different.

The cases are remanded to the Board with directions to redetermine the tax deficiencies of the taxpayer for the years in question, in accordance with this opinion.