JAMES A. ALLAN AND EILEEN ALLAN, DENNIS M. EVAVOLD AND JOANNE L. EVAVOLD, LOWELL GORDON, DONALD J. HAMM AND BEVERLY J. HAMM, WILLIAM D.C. MATTISON AND BARBARA A. MATTISON, BRUCE M. NELSON AND DORIS A. NELSON, ROBERT OSTERBAUER, AND DANIEL R. VAUGHAN AND ROBERTA E. VAUGHAN, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16428-82.    Filed April 14, 1986.

*Charles P. Brink*, and *Steven L. Ross*, for the petitioners.
*Dale L. Newland*, for the respondent.

CLAPP, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable year 1978 as follows:

| Petitioner | Deficiency |
| --- | --- |
| James A. Allan and Eileen M. Allan | $82,991 |
| Dennis M. Evavold and Joanne L. Evavold | 1,157 |

| *Petitioner* | *Deficiency* |
| --- | --- |
| Lowell J. Gordon | $2,487 |
| Donald J. Hamm and Beverly J. Hamm | 2,304 |
| William D.C. Mattison and Barbara A. Mattison | 17,824 |
| Bruce M. Nelson and Doris A. Nelson | 9,286 |
| Robert F. Osterbauer | 41,353 |
| Daniel R. Vaughan and Roberta E. Vaughan | 419 |

The issues for decision are: (1) What amount, if any, of petitioners' distributive share of partnership income constitutes ordinary income under the tax benefit rule as a result of the partnership transferring property in lieu of foreclosure encumbered by a nonrecourse mortgage; and (2) what amount, if any, of petitioners' distributive share of partnership income constitutes ordinary income under section 1245[1] as a result of the property transfer.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. When the petition in the instant case was filed, all of petitioners resided in the State of Minnesota.

Prior to November 1, 1971, a Minnesota limited partnership was formed with the name Stevens House Co. (hereinafter the partnership). Petitioners in the instant case were partners in this limited partnership.

On November 1, 1971, the partnership agreed to purchase land, a 72-unit apartment building, and related personal property for the amount of $989,000 from an unrelated third party. According to the contract for deed, this sale was subject to the seller's acquisition of a nonrecourse note not to exceed the amount of $944,000. The mortgage was to be insured under section 221(d)(4) of the National Housing Act, 12 U.S.C. sec. 1715(d)(4) as implemented by the U.S. Department of Housing and Urban Development (hereinafter HUD). On March 29, 1972, the seller mortgaged the property to George C. Jones Co. in the amount of $943,500. The parties agree that the partnership acquired the prop-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.

erty subject to the mortgage and took deductions for interest and real estate taxes on the accrual basis subsequent to its contract for deed purchase on November 1, 1971.

Paragraph 10 of the mortgage provides as follows:

10. In the event of Mortgagor's failure to pay any sums provided for in this Mortgage, the Mortgagee, at its option, may pay the same. * * * if the Mortgagor shall fail to pay any other governmental or municipal charge, the Mortgagor shall forthwith make good the deficiency or pay the charge before the same become delinquent or subject to interest or penalties and in default thereof the Mortgagee may pay the same. All sums paid by the Mortgagee and any sums which the Mortgagee may be required to advance to pay mortgage insurance premiums shall be added to the principal of the debt secured hereby and shall bear interest from the date of payment at the rate specified in the Note and shall be due and payable on demand. * * *

The partnership paid all expenses associated with the operation of the property through July 1, 1974. In approximately July of 1974, the income from the property was insufficient to allow for any payments to be made on the mortgage. The mortgagee, George C. Jones Co., declared the mortgage loan in default and sought recovery of the debt from HUD pursuant to its contract of mortgage insurance with HUD. HUD exercised its rights pursuant to that agreement and acquired the mortgage on December 4, 1974. HUD secured a new management company to manage the property.

After December 4, 1974, HUD paid real estate taxes as the same came due. HUD also charged the partnership for the interest payments due on the mortgage as they came due. HUD added these advances to the mortgage principal as they were made and charged the mortgage interest rate thereon to the partnership.

As a result of the continuing failure of the income from the property to support a payment of the mortgage principal, interest, and taxes, HUD commenced a judicial foreclosure proceeding against the owners of the property. On November 1, 1978, the partnership in lieu of foreclosure transferred all of its right, title, and interest in the property to HUD. The partnership paid $56,956 to HUD in conjunction with its transfer of the property. There was no contemporaneous agreement between the parties as to the allocation of this payment. The transfer of the property by the partner-

ship to HUD on November 1, 1978, represented a transfer of all of the property of the partnership.

The partnership accrued, but did not itself pay, the following amounts of interest on the mortgage and real estate taxes which were claimed as deductions on the partnership's income tax returns:

| Years | Interest | Taxes |
|-------|----------|-------|
| 1974 | $38,064 | $137,950 |
| 1975 | 74,982 | 52,397 |
| 1976 | 64,580 | 61,885 |
| 1977 | 65,376 | 27,480 |
| 1978 | 54,480 | 31,222 |
| Total | 297,482 | 310,934 |

HUD payment from Stevens House escrow ............. (35,714)[1]
FHA reserve escrow ................................. (15,215)[1]
260,005

[1]These payments were made to HUD during the years 1974-78 and credited toward the payment of real estate taxes.

All amounts owed for interest and real estate taxes were nonrecourse obligations.

HUD had an appraisal made of the property by Fritz Brandberg Appraisals which was completed on August 5, 1977. The appraisal estimated the fair market value of the property at $540,000. The parties agree that as of November 1, 1978, the fair market value of the real property did not exceed this amount. To establish the fair market value of the personal property located on the real estate, petitioner presented the testimony of Mr. Fritz Brandberg who had prepared the appraisal. Mr. Brandberg has been in the real estate business since 1949 and has been a full-time appraiser for more than 20 years. He is qualified with the American Society of Appraisers as a senior appraiser, as to real property of all kinds including attachments and fixtures of real property. His estimate of the fair market value of the personal property consisting of room air conditioners, electric ranges, and refrigerators was $14,000 as of August 5, 1977. Mr. Brandberg viewed the appliances in a few of the apartment units, primarily those that were vacant and in the worst condition. In his opinion, the value of the personal property would decline after August 5, 1977. Using a 10-year life, the most optimistic estimate, the value would

decline 10 percent and using a 5-year life, it would decline by 20 percent.

The partnership reported on its return a capital gain of $700,633 as a result of the transfer of the deed in lieu of foreclosure. This amount was computed by taking the difference between the entire amount of the debt outstanding to HUD ($1,455,941) minus the adjusted basis ($650,653). (A portion of this difference ($104,655) was reported as ordinary income pursuant to section 1250 and is not in dispute.) The notice of deficiency issued to petitioners determined that the portion of the $700,633, which represented the amount of previously deducted interest and real estate taxes, to wit $572,562, constituted ordinary income pursuant to section 61 and section 111. In addition, the notice determined that $77,950 of the $700,633 was ordinary income pursuant to the recapture provisions of section 1245.

## OPINION

The first issue for decision is whether petitioners are required to recognize ordinary income in an amount equal to the previously deducted interest and taxes. This issue in turn depends upon what amount was realized when the partnership transferred the property. Petitioners argue that the entire amount of outstanding nonrecourse debt to HUD, including the original mortgage, the interest payments due, and the real estate taxes paid, (which is greater than the fair market value of the property) is includable in the amount realized pursuant to *Commissioner v. Tufts*, 461 U.S. 300 (1983). Respondent contends that the amounts outstanding for the interest and taxes should not be considered as part of the amount realized but should be considered independently. Respondent argues that the satisfaction of the liability for the interest and taxes constitutes a recovery pursuant to the tax benefit rule and the amounts recovered therefore are required to be included in income as ordinary income.

It is now well settled that the transfer of property by deed in lieu of foreclosure constitutes a "sale or exchange." *Freeland v. Commissioner*, 74 T.C. 970 (1980). Section 1001 governs the determination of gains and losses on the sale or

exchange of property. Section 1001(a) defines the gain or loss as the difference between the amount realized on the disposition and the property's adjusted basis. Section 1001(b) defines the amount realized from the sale or other disposition of property as the sum of any money received plus the fair market value of the property (other than money) received. In *Commissioner v. Tufts, supra*, a partnership entered into a $1,851,000 nonrecourse mortgage loan agreement with a savings association for the purpose of constructing an apartment complex. The partners' contributions to capital were minimal. The nonrecourse loan was included in the partners' adjusted basis in their partnership interests permitting them to deduct their distributive shares of partnership losses. Rental income from the apartment complex was less than expected and as a result, the partnership was unable to make the payments due on the mortgage. Each partner sold his partnership interest to an unrelated third party who as consideration agreed to assume the nonrecourse liability and to reimburse each partner's sales expenses up to $250. On the date of the transfer, the fair market value of the property did not exceed $1,400,000. The issue presented was whether the amount realized upon the sale of the partnership interest included the entire amount of the partnership nonrecourse liabilities or whether it was limited to the fair market value of the property securing those liabilities. The Court held:

> When a taxpayer sells or disposes of property encumbered by a nonrecourse obligation, the Commissioner properly requires him to include among the assets realized the outstanding amount of the obligation. The fair market value of the property is irrelevant to this calculation. [461 U.S. at 317.]

The parties in the instant case agree that the fair market value is not the relevant factor in determining the amount realized. Respondent argues that the amount realized does not include that part of the nonrecourse debt which represents the interest and taxes but rather is limited to the mortgage principal. Respondent points to the fact that petitioners did not consistently treat these amounts as mortgage principal in that the partnership did not add the amounts to the basis of the property. The partnership instead took current deductions as these expenses accrued.

In respondent's view, the exclusion of these expenses from basis of the property requires the exclusion of the discharged liability to pay these expenses from the amount realized.

Petitioners rely on paragraph 10 of the mortgage to support their position that HUD added to the mortgage principal the real estate tax payments paid and the interest payments due. HUD charged the mortgage interest rate to the partnership for these advanced moneys.

We agree with petitioners. The advances were considered mortgage principal by the terms of the mortgage agreement and as such were subject to the mortgage interest rate. Only by adding these advances to the mortgage principal could interest on the advances be charged. The nonrecourse obligation was satisfied when the partnership paid the $56,000 payment and transferred the property securing that obligation. Therefore, the amount realized includes the amount of the nonrecourse debt in accordance with *Commissioner v. Tufts, supra.*

In making its determination in *Tufts*, the Court relied on the rationale in *Crane v. Commissioner*, 331 U.S. 1 (1947), to the effect that a mortgagor receives the loan proceeds tax free and includes them in his basis on the understanding that he has an obligation to repay the full amount. When the obligation to repay is extinguished, the mortgagor realizes value within section 1001(b).

Respondent seems to read *Tufts* to limit the amount realized only to those liabilities which were included in the basis of the property. This reading is too narrow. The Court noted with approval *Mendham Corp. v. Commissioner*, 9 T.C. 320 (1947), and *Lutz & Schramm Co. v. Commissioner*, 1 T.C. 682 (1943). In these opinions, the mortgage was acquired subsequent to the purchase of the property and the amount thereof was not added to the basis of the property. It was sufficient that the mortgagor received the benefit of the cash proceeds. In both opinions, it was held that the amount of the outstanding mortgage debt should be included in the amount realized. See also *Estate of Levine v. Commissioner*, 634 F.2d 12, 18 (2d Cir. 1980), affg. 72 T.C. 780 (1979).

Section 1.1001-2(a), Income Tax Regs., also warrants this result. It provides that:

Sec. 1.1001-2. Discharge of Liabilities.

(a) *Inclusion in amount realized*—(1) *In general.* Except as provided in paragraph (a)(2) and (3) of this section, the amount realized from a sale or other disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition.

Paragraph (a)(2) provides that the amount realized from the disposition of property that secures a recourse liability does not include amounts that are income from the discharge of indebtedness. Paragraph (a)(3) excludes liabilities incurred by reason of the acquisition of the property which are not taken into account in determining the transferor's basis. Neither of these exceptions applies to the instant case. The outstanding debt to HUD was satisfied as a result of the disposition of the property.

To support the contention that the portion of capital gain reported by petitioners representing the unpaid taxes and interest should be treated as ordinary income, respondent primarily relies on a series of cases which apply the tax benefit rule. This rule requires the recognition of income when a subsequent event occurs which is "fundamentally inconsistent with the premise on which [an earlier] deduction was initially based. That is, if that event had occurred within the same taxable year, it would have foreclosed the deduction." *Hillsboro National Bank v. Commissioner*, 460 U.S. 370, 383-384 (1983) (fn. refs. omitted). However, the rule adopted in *Tufts* of including the nonrecourse obligation as part of the amount realized is similar to but distinct from the tax benefit rule: "Our analysis applies even in the situation in which no deductions are taken. It focuses on the obligation to repay and its subsequent extinguishment, not on the taking and recovery of deductions." *Commissioner v. Tufts, supra* at 310 n. 8. The Court in *Tufts* also noted that:

In the context of a sale or disposition of property under §1001, the extinguishment of the obligation to repay is not ordinary income; instead, the amount of the canceled debt is included in the amount realized, and enters into the computation of gain or loss on the disposition of property. * * * [461 U.S. at 311 n. 11.]

In invoking the tax benefit rule, respondent relies on *1180 East 63rd Street Building Corp. v. Commissioner*, 12 T.C. 437 (1949). In that case, a foreclosure suit was brought by county authorities to enforce its tax lien for unpaid taxes levied against real estate property owned by an accrual basis taxpayer. In agreement with the authorities, taxpayer's nominee bought the property at foreclosure for an amount less than the amount of assessed taxes, which the taxpayer had previously deducted. The Court found that any recourse liability still existing after the foreclosure was so remote as to be nonexistent and the extinguishment of liability of amounts previously deducted was includable in income under section 22(b)(12) of the Internal Revenue Code of 1939 (predecessor to section 111). The liability for the taxes was extinguished by the taxing authority. In the instant case, the real estate taxes were paid to the authorities by a third party, HUD, who then added those amounts to the outstanding debt. The debt was later discharged by HUD by the transfer of the property. This subsequent event, the discharge of the debt, however, was not fundamentally inconsistent with the deduction taken for the taxes. At the time the taxes were paid, the partnership agreed to reimburse HUD for these amounts. There is no suggestion from respondent that this agreement did not constitute a bona fide debt obligation under such circumstances. The partnership was relieved of this debt when the property was transferred in lieu of foreclosure. The inclusion of the amount of the nonrecourse debt in the amount realized pursuant to *Tufts* is not based on the cancellation of indebtedness doctrine. *Estate of Delman v. Commissioner*, 73 T.C. 15, 32-33 (1979); see *Commissioner v. Tufts*, *supra* at n. 11. (and concurring opinion of Justice O'Connor). Compare Income Tax Regs. sec. 1.1001-2(a) with sec. 1.1001-2(a)(2).

Respondent also relies on *Monday v. Commissioner*, T.C. Memo. 1957-1, affd. per curiam 252 F.2d 789 (6th Cir. 1958), where the taxpayer made wholesale purchases of defense housing units subject to existing mortgages insured by the Federal Housing Administration. The mortgages provided for monthly payments to be made by the mortgagor to the mortgagee which would equal an estimate of the ground

rent, taxes, water rates, special assessments, and insurance premiums. Such payments were held in escrow for the benefit of the mortgagor before the taxes, etc. became due. When the taxpayer acquired a defense housing unit, he paid to the mortgagee, in addition to the negotiated purchase price, an amount equal to the accumulated escrow account. The taxpayer treated this amount as an expense deduction against rental income and did not treat it as part of the cost basis of the property. When the taxpayer sold a property, he received, in addition to the selling price, a refund in the amount of the accumulated escrow account. The amount was not included by the taxpayer in income nor treated as part of the selling price.

This Court in determining that the refunded escrow accounts constituted receipt of income recited the following factors:

The factors reflected therein fatal to petitioner's case are (1) that the original escrow payments made to the mortgagee upon purchase, were considered separate from cost, and were taken as a current expense deduction against rental income for that period; (2) that the further payments made on his behalf by the agencies managing the projects were not a duplication of those originally made but were a continuation of the monthly payment requirements which were also treated as current expense deductions in preparing the net cash rental (or deficit) statements supplied to petitioner and upon which his tax returns were prepared; (3) that the refunded escrow amounts were not treated as part of the selling price of the property, did not enter into any calculation of net gains upon such sale * * * and were excluded from calculations of income by the accountants. [16 T.C.M. 10, 26 P-H Memo T.C. par. 57,001, at 8-57.]

The escrow payments were considered separate and apart from the selling price of the property. Here, the advances for the interest and taxes were added to the mortgage principal, and the liability for the mortgage was extinguished when the property was transferred.

Respondent contends that the failure to consistently treat expensed items as capital assets under a recognized method of depreciation prevents the later characterization of these expensed items as the sale of property subject to capital gain rates. Instead, in respondent's view, the application of the tax benefit rule requires the inclusion of the items in ordinary income. Respondent relies on *Commissioner v.*

*Anders*, 414 F.2d 1283 (10th Cir. 1969), revg. 48 T.C. 815 (1967), which involved a Kansas corporation engaged in the business of providing a rental service of laundered towels, seat covers, coveralls, and other items of apparel. It charged the full cost of the rental items to expense accounts when purchased. Under a plan of liquidation pursuant to section 337, the corporate assets, including the rental items, were sold to another corporation. The parties agreed on the amount of consideration to be paid for the rental items. The issue presented was whether this amount was gain from the sale of property within the nonrecognition provisions of section 337 or ordinary income under tax benefit principles. The Court of Appeals concluded that the nonrecognition provision of section 337 did not preclude application of the tax benefit rule. Under tax benefit principles, the proceeds received for the rental items were to be treated as recoupment of the expense charges instead of as gain from the sale of property. The Court of Appeals rejected the taxpayer's argument that the expense charges were the same as depreciation which was not subject to recapture during the taxable year involved.

Subsequent to *Anders*, the Supreme Court decided *Hillsboro*, where it was held that section 336 did not preclude application of tax benefit principles where cattle feed which had been fully expensed by the taxpayer was distributed to the shareholders in liquidation. The Court noted that:

If the taxpayer * * * sells the [expensed] asset rather than consuming it in furtherance of his trade or business, it is quite clear that he would lose his deduction, for the basis of the asset would be zero, * * * so he would recognize the full amount of the proceeds on sale as gain. [460 U.S. at 395.]

We agree with petitioners that *Anders* is not applicable to the case at bar. In *Anders* one had a sale of a segregable tangible asset apart from other assets. Here we have advances which are part of mortgage principal which was extinguished upon transfer of the property. The advances do not comprise a separate asset apart from the property. Furthermore, in *Anders* no income of any kind would have been recognized by the seller without application of the tax benefit rule. In the present case, income is recognized

because the amounts at issue are included in the amount realized.

Respondent seeks, through the tax benefit rule, to recharacterize capital gain as ordinary income. Here, in essence, petitioner borrowed money from a third party, took the cash and paid expenses connected with the property, i.e., interest and taxes. The debt was secured only by the property. The partnership later transferred the property in lieu of foreclosure in a transaction considered the equivalent of a sale or exchange. The amount realized includes the outstanding amount of the mortgage. Under respondent's analysis, we should then trace the mortgage proceeds and, if used for deductible expenses, subtract that portion of the debt from amount realized and recharacterize it as ordinary income under the tax benefit rule. We believe this recharacterization is an improper application of that rule.

Respondent cites a series of cases dealing with the tax consequences to the mortgagee, apparently for the proposition that symmetry requires that if no interest income is recognized by the mortgagee then the mortgagor must include amounts previously deducted as income. These cases held that where a debtor voluntarily surrenders mortgaged property to the mortgagee, the mortgagee realizes income in the form of accrued interest if the value of the property is more than the amount of the principal amount of the loan. *Helvering v. Missouri State Life Insurance Co.*, 78 F.2d 778 (8th Cir. 1934); *Manhattan Mutual Life Insurance Co. v. Commissioner*, 37 B.T.A. 1041 (1938); *Manufacturers Life Insurance Co. v. Commissioner*, 43 B.T.A. 867 (1941). These cases all deal with accrued but unpaid interest on the mortgage. In the instant case, the interest was deemed paid when it was added to the mortgage principal. The mortgage principal was extinguished on the transfer of the property. Therefore, these cases have no relevancy to the present case.

Respondent is attempting to bifurcate the disposition of the property into two separate events: (1) Relief from the mortgage principal, and (2) relief from the liability for the accrued interest and taxes. Yet there is only one mortgage, one note, and one property transfer. Under *Tufts* and section 1.1001-2(a), Income Tax Regs., the amount realized

is the amount of nonrecourse liabilities which are discharged as a result of the transfer of the property. In the instant case, the amount realized is the entire outstanding debt to HUD.

The second issue for decision involves recharacterization of capital gain as ordinary income as provided in section 1245(a).[2] In general, this section provides that the amount by which the lower of the recomputed basis of the property or the amount realized on the sale, exchange, or involuntary conversion (or the fair market value on any other disposition) exceeds the adjusted basis shall be treated as ordinary income. In this case, certain section 1245 property was disposed of when the apartment building was transferred. The parties disagree as to the method of allocating the amount realized attributable to the section 1245 property. Petitioners rely on section 1.1245-1(a)(5), Income Tax Regs., which states that the amount realized shall be allocated between section 1245 and non-section 1245 property in proportion to their respective fair market values. Petitioners argue that the value of the section 1245 property at the time of its disposition was zero. Therefore, none of the amount realized should be allocated to the personal property and there is no recapture. In the alternative, petitioners argue that at most the section 1245 property was worth $14,000, the appraised value of the property as of August 5, 1977, which was 2.6 percent of the entire fair market value of $540,000. Therefore, the amount of recapture should be 2.6 percent of the amount realized. Respondent contends that this regulation is not applicable where the amount realized includes the amount of extinguished mortgage liability. In respondent's view, inasmuch as the fair market value of the property is irrelevant in determining the

---

[2]SEC. 1245. GAIN FROM DISPOSITIONS OF CERTAIN DEPRECIABLE PROPERTY.
(a) GENERAL RULE.—
    (1) ORDINARY INCOME.—Except as otherwise provided in this section, if section 1245 property is disposed of during a taxable year beginning after December 31, 1962, the amount by which the lower of—
        (A) the recomputed basis of the property, or
        (B)(i) in the case of a sale, exchange, or involuntary conversion, the amount realized, or
        (ii) in the case of any other disposition, the fair market value of such property,
exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle.

amount realized in this case, the proper allocation between the section 1245 and non-section 1245 property should be based on the amount of the original mortgage liability attributable to the section 1245 property and used to calculate its basis minus any proportionate amounts of principal paid prior to default.

The authority respondent cites in support of the contention that the regulation is inapplicable is *Estate of Delman v. Commissioner, supra.* In that opinion, electronics equipment subject to nonrecourse indebtedness was repossessed. At the time of repossession, the fair market value of the equipment was less than the nonrecourse debt. The taxpayer argued that in computing the section 1245 recapture, section 1245(a)(1)(B)(ii) referring to fair market value was applicable. The Court held that because the repossession was a "sale or exchange," section 1245(a)(1)(B)(i) referring to the amount realized which included the nonrecourse debt was the controlling provision. *Estate of Delman* did not address section 1.1245-1(a)(5), Income Tax Regs., and we can see no reason to deviate from the method set forth in such regulation.

Based on the only testimony presented at trial, which we found credible, we find the value of the section 1245 property as of August 5, 1977, was $14,000. Recognizing that the value of this property would decline during the year before disposition and accepting Mr. Brandberg's estimate of 10-percent decline, we find the value of the personal property to be $12,600. This amount is 2.3 percent of the fair market value of the entire property ($12,600/$540,000). Accordingly, the amount realized from the section 1245 property is 2.3 percent of the total amount realized ($1,455,941) or $33,486.

To reflect the foregoing,

*Decision will be entered under Rule 155.*