T.C. Memo. 1999-61

UNITED STATES TAX COURT

STEPHEN L. AND COLLEEN ATWOOD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19748-97.                    Filed March 4, 1999.

Stephen L. and Colleen Atwood, pro sese.

<u>James F. Prothro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined a deficiency of
$10,756 in petitioners' 1995 Federal income tax and an accuracy-
related penalty in the amount of $2,151 pursuant to section 6662.
Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the year at issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

The issues remaining for decision are:  (1) Whether petitioners are taxable on distributions totaling $38,117 from the termination of a life insurance policy and an endowment policy; (2) whether petitioners are entitled to deduct interest on amounts borrowed against these two policies; and (3) whether petitioners are liable for an accuracy-related penalty for a substantial understatement of income tax.[1]

### FINDINGS OF FACT

The parties have stipulated some of the facts, which are so found.  The stipulation of facts with attached exhibits is incorporated herein by this reference.  When they petitioned the Court, petitioners were married and resided in Dallas, Texas.

In 1986, petitioner husband purchased a single premium life insurance policy from First Colony Life Insurance Co. (First Colony), paying a single premium of $25,000.  On March 8, 1988, petitioner wife purchased a single premium endowment policy from National Western Life Insurance Co. (National Western), paying a single premium of $50,000.

---

[1] Petitioners stipulated that they failed to report taxable interest income in the amount of $26 on their 1995 joint Federal income tax return.

Each of the policies permitted the owner to borrow generally up to the amount of policy cash value, using the policy as security. Each contract required payment of a specified rate of interest on amounts borrowed, with any accrued but unpaid interest to be added to the loan and to bear interest at the same rate. Each contract provided for the termination or lapse of the policy when the total loan, including unpaid interest, exceeded the policy cash value (the value of the single premium accumulated with interest less certain specified charges).

Because of financial hardship and in order to pay personal living expenses, petitioners each borrowed the maximum allowable amounts against their policies. They each failed to completely repay these loans or interest thereon, resulting in the termination of each policy in 1995.

When First Colony terminated petitioner husband's policy, his outstanding loan balance, exclusive of certain unpaid interest, was $39,403.63. The policy had a cash value of $39,843.11, and a cash surrender value of $439.48 ($39,843.11 minus $39,403.63). Upon termination, First Colony sent petitioner husband a check in the amount of the cash surrender value ($439.48). First Colony also issued petitioner husband a Form 1099-R, reflecting a taxable gain of $14,843.11, which the company computed as the cash value of $39,843.11, less his investment in the contract of $25,000.

When National Western terminated petitioner wife's policy, her outstanding loan balance was $73,274.49. National Western issued petitioner wife a Form 1099-R, reflecting a taxable gain of $23,274.49, which the company computed as the outstanding loan balance of $73,274.49, less her investment in the contract of $50,000.

On their 1995 joint Federal income tax return, petitioners reported no taxable distributions from their terminated insurance policies. Respondent determined that petitioners had income of $14,843 from the First Colony policy and $23,274 from the National Western policy.

OPINION

In general, with exceptions not applicable here, any amount which is received under a life insurance contract or endowment contract before the annuity starting date and which is not received as an annuity is included in gross income to the extent it exceeds the investment in the contract. Sec. 72(e)(1)(A), (5)(A), (C). The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less aggregate amounts previously received under the contract, to the extent they were excludable from gross income. Sec. 72(e)(6).

The derivation and computation of the amounts reported on the Forms 1099-R by First Colony and National Western upon

termination of petitioners' policies are not in dispute.  The only issue is whether these amounts are includable in petitioners' gross income as amounts received within the meaning of section 72(e).

Noting that very little cash was paid directly to them upon cancellation of the policies, petitioners argue that the amounts at issue represent merely "paper transactions" on the books of the insurance companies.  They argue that, in borrowing against the policies, they were borrowing their own money, and that capitalized interest on the loans merely increased their investments in the contracts.  We disagree.

Petitioners' insurance contracts, by their terms, treated the policy loans, including capitalized interest, as bona fide indebtedness.  For Federal income tax purposes, their policy loans constituted true loans, rather than cash advances, and were not taxable distributions when received.  See Minnis v. Commissioner, 71 T.C. 1049, 1057 (1979).[2]  The capitalized interest on these loans is properly treated as part of the principal of this indebtedness.  See Allan v. Commissioner, 86

---

[2] Subsequent to the decision in Minnis v. Commissioner, 71 T.C. 1049 (1979), which dealt specifically with loans under an annuity contract, Congress enacted sec. 72(e)(4), which generally treats loans under annuity contracts as taxable distributions. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 265(a), 96 Stat. 544.  Loans under life insurance contracts and endowment contracts (other than modified endowment contracts) are excepted from this treatment.  See sec. 72(e)(5)(A)(i).

T.C. 655, 661-667 (1986)(advances for interest that were added to the nonrecourse mortgage principal, pursuant to the terms of the mortgage, constituted a true debt obligation), affd. 856 F.2d 1169 (8th Cir. 1988).

When petitioners' policies terminated, their policy loans, including capitalized interest, were charged against the available proceeds at that time. This satisfaction of the loans had the effect of a pro tanto payment of the policy proceeds to petitioners and constituted income to them at that time. See Minnis v. Commissioner, supra at 1056 (dictum); Caton v. Commissioner, T.C. Memo. 1995-80; Dean v. Commissioner, T.C. Memo. 1993-226. A contrary result would permit policy proceeds, including previously untaxed investment returns, to escape tax altogether and finds no basis in the law.

Petitioners argue that if the distributions on the terminated insurance policies are taxable, then they should be allowed an offsetting deduction for interest paid on the policy loans. Deductions are a matter of legislative grace, and petitioners bear the burden of showing that they are entitled to the claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Section 163(a) generally allows as an interest deduction all interest paid or accrued within the taxable year on indebtedness. As an exception to this general rule, however, in the case of a taxpayer other than a

corporation, section 163(h) generally disallows any deduction for "personal interest", defined to include any interest expense that does not fall within one of the five categories listed in section 163(h)(2). These categories may be described generally as (1) trade or business interest; (2) investment interest; (3) interest used to compute passive income or loss; (4) qualified residence interest; and (5) interest payable on certain deferred estate tax payments. Petitioners have presented no evidence to show that the interest expenses in question fall within any of these five enumerated categories. To the contrary, petitioner husband testified at trial that he borrowed against his life insurance policy "for no other reason than to live in the absence of a job." On brief, petitioners reiterate that this was their reason for borrowing against their policies. We conclude, therefore, that the interest expense in question was nondeductible personal interest.

Relying on an exception in section 264(c)(3), petitioners argue that their interest expenses are not subject to disallowance under section 264(a)(2), which generally disallows interest deductions on indebtedness incurred or continued to purchase or carry a single premium life insurance, endowment, or annuity contract.[3] It appears that neither the general rule of

---

[3] SEC. 264. CERTAIN AMOUNTS PAID IN CONNECTION WITH INSURANCE CONTRACTS.

(continued...)

section 264(a)(2) nor the cited exception applies to the case at hand.[4]   Because we have concluded that the interest in question

---

[3](...continued)
(a)  General Rule.--No deduction shall be allowed for--

* * * * * * *

(2) Any amount paid or accrued on indebtedness incurred or continued to purchase or carry a single premium life insurance, endowment, or annuity contract.

(3) Except as provided in subsection (c), any amount paid or accrued on indebtedness incurred or continued to purchase or carry a life insurance, endowment, or annuity contract (other than a single premium contract or a contract treated as a single premium contract) pursuant to a plan of purchase which contemplates the systematic direct or indirect borrowing of part or all of the increases in the cash value of such contract (either from the insurer or otherwise).

* * * * * * *

(c) Exceptions.--Subsection (a)(3) shall not apply to any amount paid or accrued by a person during a taxable year on indebtedness incurred or continued as part of a plan referred to in subsection (a)(3)--

* * * * * * *

(3) if such amount was paid or accrued on indebtedness incurred because of an unforeseen substantial loss of income or unforeseen substantial increase in his financial obligations * * *.

[4]   There is no evidence in the record that the loans in question were "incurred or continued to purchase or carry" single premium life insurance or endowment contracts, within the meaning of sec. 264(a)(2).  Moreover, the exception contained in sec. 264(c)(3) pertains only to plans referred to in sec. 264(a)(3), which specifically excludes single premium contracts.

was nondeductible personal interest under section 163(h), however, the issue is moot.

We hold, therefore, that petitioners are taxable on distributions from their terminated policies in the amount of $38,117 and are not entitled to deductions for interest paid on their policy loans.

Substantial Understatement of Income Tax

Respondent also determined an accuracy-related penalty under section 6662 for a substantial understatement of tax for taxable year 1995. Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax, which is defined as an understatement that exceeds the greater of 10 percent of the tax required to be shown or $5,000. Sec. 6662(d)(1)(A). Petitioners reported total tax of $6,231 and understated their tax in the amount of $10,756. Therefore, there was a substantial understatement of tax.

Any understatement is reduced to the extent that it is attributable to an item that was adequately disclosed and has a reasonable basis, or for which there was substantial authority for its tax treatment. Sec. 6662(d)(2)(B). Notwithstanding that petitioners were issued Forms 1099-R indicating taxable distributions upon termination of their insurance policies, petitioners made no disclosure on their return of the relevant

facts affecting their exclusion of these amounts from gross income.  See sec. 6662(d)(2)(B)(ii)(I).  Petitioners have established no substantial authority for excluding these amounts from income.

Accordingly, we sustain respondent's imposition of the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.