T.C. Summary Opinion 2016-74

UNITED STATES TAX COURT

KARL D. BOBO AND KIMBERLY D. BOBO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15840-15S.                          Filed November 8, 2016.

Karl D. Bobo and Kimberly D. Bobo, pro sese.

Annie Lee, Thomas R. Mackinson, and Michael Skeen, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 23, 2015, respondent determined a deficiency of $7,175 in petitioners' Federal income tax for 2012. The issue for decision is whether petitioners' receipt in 2012 of $20,500 designated by the payor as payment for a deed in lieu of foreclosure is ordinary income. Respondent also determined that petitioners are liable for an alternative minimum tax of $410. This is a computational adjustment dependent on the outcome of the disputed issue.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. Petitioners resided in California when the petition was timely filed.

Petitioners Karl D. Bobo (petitioner husband) and Kimberly D. Bobo were residing in California during the year in issue. In 2008 petitioners owned their primary residence in California (California house) but worked in management positions requiring frequent travel to North Carolina. For this reason petitioners purchased a second house in North Carolina (North Carolina house) in March

[1](...continued)
Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

2008[2] for $850,000. Petitioners secured a nonrecourse mortgage note to finance 90% of the purchase price and made a downpayment of $85,000.

Sometime before May 2012 petitioners began experiencing financial difficulties and sought loan modifications from the companies holding mortgages on the California and North Carolina houses. Although petitioners did not qualify for a loan modification for the loan on the North Carolina house, the mortgage company Green Tree Services, LLC (Green Tree), informed petitioners that they might qualify for a "deed in lieu of foreclosure" (deed in lieu of foreclosure) program. Since petitioners could no longer afford to make payments on the North Carolina mortgage loan, they applied for and were accepted into this program.

In May 2012 petitioners entered into a deed in lieu of foreclosure agreement with Green Tree that included a "cash for keys" (cash for keys) payment. Under the terms of this agreement petitioners signed the deed over to Green Tree and in exchange the mortgage company forgave the balance of petitioners' note on the property. Petitioners also agreed to vacate the property by a certain time and meet other specified requirements, including leaving the property in "broom-swept condition", and in exchange petitioners would receive a cash for keys payment.

---

[2]Petitioners' tax return reported the purchase date of March 26, 2008. Petitioners executed the promissory note relating to the purchase of the house on January 23, 2008.

The cash for keys program was designed by mortgage lenders to allow them to gain possession of a property quickly and avoid a long foreclosure process. Lenders began issuing these payments in exchange for borrowers' vacating a property quickly and leaving it in good condition. A foreclosure process to reclaim a property can be time consuming, causing a lender to spend time and money and risk further damage to the property.[3]

Petitioners provided a copy of the letter from Green Tree's law firm Hutchens, Senter, Kellam, & Petit, P.A. dated May 4, 2012. The letter stated that "you have agreed to sign a deed in lieu of foreclosure on your property" in North Carolina. The letter instructed petitioners as follows:

> Please sign the enclosed Deed, Marital Status Affidavit(s), Affidavit Regarding Liens, and Estoppel Affidavit before a Notary Public and return these documents to our office no later than 5/25/2012 and vacate by 5/25/2012. A property inspection will be ordered by Green Tree on or after 5/25/2012. Based on your agreement with the lender $20,500.00 cash for keys incentive will be issued by Green Tree once Green Tree confirms property is vacant and in broom swept condition.
>
> Also please send evidence/information that assessments and homeowners association dues if any are paid in full to the transfer date unless other agreements regarding these items have been previously approved by the lender, and forward all keys to the subject

---

[3]Respondent provided this explanation at trial, and petitioners did not dispute the nature of the cash for keys program.

property, if you have any in your possession, to our office when you return the documents mentioned above.

Petitioners also provided copies of the marital status affidavit, warranty deed, affidavit regarding liens, and estoppel affidavit, all dated May 21, 2012, executed as part of the agreement described in the letter dated May 4, 2012. The warranty deed and the estoppel affidavit reflect that petitioners signed the deed to the North Carolina house and agreed to vacate it by May 25, 2012, in exchange for Green Tree's canceling the note on the North Carolina house.

Green Tree issued a Form 1099-MISC, Miscellaneous Income, for the cash for keys payment in petitioner husband's name and categorized the $20,500 in box 7 as "nonemployee compensation".[4] Green Tree also issued a Form 1099-A, Acquisition or Abandonment of Secured Property, to petitioner husband. The Form 1099-A reported an acquisition date of May 29, 2012, a loan principal balance outstanding of $716,426, and fair market value of the property of $607,500.[5]

---

[4]Petitioner husband did not work for Green Tree. The parties agree that Green Tree issued the Form 1099-MISC for the cash for keys incentive payment.

[5]Green Tree calculated the cancellation of debt income of $108,926 as follows:

(continued...)

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2012 on July 11, 2013.[6] Harry Bergland, Jr., a certified public accountant, prepared the 2012 Federal income tax return. Petitioners attached to their Form 1040 a Form 8949, Sales and Other Dispositions of Capital Assets, relating to disposition of the North Carolina house. On Form 8949 petitioners claimed a cost basis of $850,000 in the North Carolina house and gross proceeds of $736,926 from the deed in lieu of foreclosure transaction with Green Tree, resulting in a loss of $113,074.[7]

---

[5](...continued)

### Cancellation of debt income

| | |
|---|---|
| Loan principal balance outstanding | $716,426 |
| Fair market value of property | (607,500) |
| Total income | 108,926 |

[6]Petitioners attached to their Form 1040 a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return.

[7]Mr. Bergland calculated petitioners' gross proceeds by adding the cash for keys incentive payment to the fair market value of the North Carolina house and the cancellation of debt income.

(continued...)

Respondent issued a notice of deficiency dated March 23, 2015, reclassifying the $20,500 payment from Green Tree as ordinary income. Petitioners timely filed their petition on June 18, 2015, contesting the notice of deficiency and asserting "the return is correct as originally filed".

## Discussion

### I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

---

[7](...continued)

| Calculation of gross proceeds | | Calculation of loss | |
|---|---|---|---|
| Cash for keys payment | $20,500 | Gross Proceeds | $736,926 |
| Fair market value | 607,500 | Cost basis | (850,000) |
| Cancellation of debt income | 108,926 | Loss | 113,074 |
| Total proceeds | 736,926 | | |

II.     Deed in Lieu of Foreclosure and Cash for Keys Payment

Section 61(a) defines gross income as "all income from whatever source derived" and includes compensation paid for services, whether furnished by the taxpayer as an employee or as a self-employed person or independent contractor. Gains derived from the sale or exchange of property are included in gross income unless excluded by law. Sec. 1.61-6(a), Income Tax Regs. The specific rules for computing gain or loss on the sale of property are governed by section 1001. Id.

It is "well settled" that the transfer of property by deed in lieu of foreclosure constitutes a "sale or exchange" for Federal income tax purposes. Allan v. Commissioner, 86 T.C. 655, 659 (1986), aff'd, 856 F.2d 1169 (8th Cir. 1988); Freeland v. Commissioner, 74 T.C. 970, 979 (1980); Lowry v. Commissioner, T.C. Memo. 2003-225, aff'd, 171 F. App'x 6 (9th Cir. 2006). The gain or loss recognized on this "sale or exchange" is the difference between the amount realized from the disposition and the property owner's adjusted basis. Sec. 1001(a). The amount realized from the disposition is the sum of any money received in the transfer plus the fair market value of property (other than money) received. Sec. 1001(b). When a taxpayer's obligation to repay a nonrecourse mortgage is extinguished, he includes the amount of the extinguished debt in his amount realized under section 1001(b). Allan v. Commissioner, 86 T.C. at 661;

sec. 1.1001-2(a)(1), Income Tax Regs.; see also Commissioner v. Tufts, 461 U.S. 300, 317 (1983); Crane v. Commissioner, 331 U.S. 1 (1947). The taxpayer's adjusted basis is generally a cost basis. Sec. 1012(a).

The Court looks to the substance of the transaction when determining how a deed in lieu of transaction or a similar exchange is taxed. 2925 Briarpark, Ltd. v. Commissioner, T.C. Memo. 1997-298, 1997 WL 357880, at *4, aff'd, 163 F.3d 313 (5th Cir. 1999). In 2925 Briarpark, Ltd. v. Commissioner, 1997 WL 357880, at *1, a partnership secured a loan to purchase a parcel of land and finance construction of a building. The partnership converted the loan to a nonrecourse loan and later defaulted on the loan. Id., 1997 WL 357880, at *1-*2. After defaulting, the partnership found a third party willing to purchase the property upon the satisfaction or removal of its encumbrances, which included a lien by the bank holding the taxpayer's loan. Id. at *2. The bank agreed to release the partnership from the lien and the nonrecourse loans if the partnership met the following conditions: (1) sale of the property to the third party for a minimum sale price of $11.6 million; (2) assignment of the sale proceeds to the bank; (3) transfer of the partnership's cash reserves of $177,495 to the bank; and (4) a $175,000 payment by the partnership's general partner. Id. The partnership met all of the bank's conditions by selling the property, assigning the sale proceeds to the bank,

and transferring the cash from the partnership and the general partner. Id. The bank subsequently released the property from the lien and nonrecourse loan, resulting in cancellation of $14 million of indebtedness. Id. at *2-*3.

The Court held that the "the sale of the property, the transfer of $177,495 cash, and the assignment of the sale proceeds * * * has the same practical effect as several other transactions which have been held to be a 'sale or exchange.'" Id. at *4. The transaction is the "functional equivalent of a foreclosure, reconveyance in lieu of foreclosure, abandonment, or repossession" and "[a]ny differences * * * are not in substance, but in form." Id. The Court did not treat the cash sale and the discharge of the loan as two independent events because "[t]he record before us * * * is replete with evidence" that the sale and the discharge were the result of a single transaction, the sale of the property. Id. at *5.

On the basis of this record we are satisfied that the deed in lieu of foreclosure and the cash for keys incentive are the results of a single transaction. Similar to the partnership in 2925 Briarpark, Ltd., which had multiple agreements relating to the exchange of the property, petitioners had two agreements with Green Tree stemming from the exchange of property: the deed in lieu of foreclosure agreement and the cash for keys agreement. Looking at the substance of the transaction the two agreements are inseparable; Green Tree would not have

issued the cash for keys payment but for petitioners' agreeing to sign over the deed to the property. Thus the cash for keys payment should be treated as part of the deed in lieu of foreclosure transaction and included in the amount realized on the North Carolina house. See sec. 1001(b) (amount realized includes money received); 2925 Briarpark, Ltd. v. Commissioner, 1997 WL 357880, at *4-*5.[8]

As a result, we calculate the gross proceeds from the transaction by adding the cash for keys incentive payment to the amount of loan forgiveness. Petitioners' basis in the property is their cost basis.[9] See secs. 1001(a) and (b), 1012(a); sec. 1.1001-2(a)(1), Income Tax Regs.

Respondent argues that the $20,500 cash for keys payment is an incentive payment which petitioners received only by fulfilling the conditions of the cash for

---

[8]The Court recognizes that 2925 Briarpark, Ltd. relates to the inclusion of proceeds from extinguishment of debt in the amount realized on the "sale or exchange" of a property and treatment of multiple agreements as part of a single property sale or exchange transaction. We extend these general principles to apply to the situation in which the lender made a cash for keys payment to petitioners in addition to cancellation of indebtedness.

[9]This achieves the same result as petitioners' calculation on their return.

| Calculation of proceeds | | Calculation of loss | |
|---|---|---|---|
| Cash for keys payment | $20,500 | Gross proceeds | $736,926 |
| Balance of loan forgiven | 716,426 | Cost basis | (850,000) |
| Total proceeds | 736,926 | Loss | 113,074 |

keys program. Respondent asserts that this incentive payment is not part of the amount realized in the exchange and should instead be considered ordinary income. It is clear from the record that Green Tree did not hire petitioner husband for services or have another reason to issue the cash for keys payment. See sec. 61(a); sec. 1.61-6(a), Income Tax Regs. Rather, the cash for keys payment was part of a single transaction, the property sale or exchange; Green Tree paid petitioners $20,500 to avoid the lengthy and expensive legal process of foreclosure as part of the deed in lieu of foreclosure process. The two agreements are inextricably linked, and there is no basis for treating them separately. See 2925 Briarpark, Ltd. v. Commissioner, 1997 WL 357880, at *4-*5.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for petitioners.